HAROLD E. BASSETT *v.* JESSIE ROSE, ACTING TAX
COLLECTOR OF MILFORD, ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued February 2—decided March 30, 1954

*Palmer L. Bevis,* for the appellant (plaintiff).

*Richard H. Lynch,* for the appellees (defendants).

WYNNE, J.   This is a taxpayer's suit brought against the town of Milford and its acting tax collector.  The action was started to test the constitutionality of § 3 of the 1951 Special Act, No. 175, entitled "An Act Changing the Fiscal Year for the Town of Milford."  26 Spec. Laws 137.

The finding establishes the following facts:  The plaintiff is, and was at all the times mentioned, the owner of real property subject to taxation in the

town of Milford. The defendant Jessie Rose is the duly appointed acting tax collector in the town. There has been a great increase in the number of dwellings in Milford since 1946. The grand list increased from $47,500,568 in 1945 to $72,789,577 in 1950. This was partly due to a revaluation of property but was also brought about by a building boom. The grand list in 1951 was $77,789,034. The building of 400 dwellings was largely responsible for the increase of about $5,000,000 in the grand list of 1951 as compared with that of 1950. Prior to October 1, 1950, the town operated on a fiscal period commencing on the assessment date, October 1, of each year and terminating September 30 of the next year. Each year, the assessors would file the grand list by the end of February following the assessment date, the board of tax review would sit during March, the tax rate would be set in April, and the tax bills would be made payable in May. In November, 1950, the town council passed an ordinance establishing a fiscal period commencing October 1, 1950, and terminating August 31, 1951. At the session of 1951, the General Assembly passed the special law here considered. Section 3 of this act provides: "The grand list for the town of Milford, as of October 1, 1950, shall be the grand list for the fiscal period commencing September 1, 1951, and terminating June 30, 1952."

The avowed purpose of the statute was to rearrange the fiscal period of the town and the due dates for payment of taxes so that it would not be necessary to borrow for town expenditures in anticipation of the collection of taxes. To accomplish this, the statute changed the fiscal period of the town so that, commencing in 1952, it would begin on July 1 instead of October 1 in each year and end on June

30 instead of September 30 in the following year. Since taxes are levied and collected on an assessment made as of October 1 in each year, the plan to establish a new fiscal period meant that during the year 1951-1952 there would be a ten-month fiscal period, instead of a twelve-month period, for which taxes would have to be levied. It was determined that the town budget should be prepared in April of each year and that tax bills should be sent as of July 1, the beginning of the new fiscal period. The change-over contemplated that each fiscal year should commence nine months after, instead of contemporaneously with, the date of the applicable grand list. To accomplish this, the act in question provided that the assessments made as of October 1, 1950, should constitute the assessments for the ten-month period from September 1, 1951, to June 30, 1952. The use of the grand list of October 1, 1950, as the basis for the tax levy for that period was necessary because the nature of the change-over required the use of one grand list twice and because the work of completing a grand list, laying the tax on it, preparing the tax bills, and setting payment dates made the use of a later list unpractical. The assessment list of October 1, 1950, therefore, became the basis for the levy and collection of taxes for two fiscal periods. The plaintiff claims that this works a discrimination among taxpayers because it requires those whose properties were assessed as of October 1, 1950, to pay taxes on a valuation set as of that date, irrespective of subsequent changes, and also because it frees from taxation entirely those whose properties were included in the list of October 1, 1951, but not in the list of October 1, 1950. This discrimination, he claims, makes the statute unconstitutional.

It is conceded that the plaintiff on or about February 21, 1952, petitioned the board of tax review of the town to consider omissions of taxable property for the fiscal period September 1, 1951, to June 30, 1952, and that this petition was not granted. The board of tax review heard appeals for the fiscal period October 1, 1950, to August 31, 1951, but did not meet to hear appeals for the subsequent fiscal period because the directions of § 3 of the special act were that the tax for that period was to be laid on the grand list of October 1, 1950, and the work of the board of tax review on that list had been completed in March, 1951. It is argued that the plaintiff was thus prevented from having property which was properly taxable added to the grand list used for the fiscal period September 1, 1951, to June 30, 1952. The plaintiff and others similarly placed were required to pay, for that fiscal period, a tax rate of 31 mills. If the grand list had included the $5,000,000 by which the list of October 1, 1951, increased over that of October 1, 1950, the tax rate would have been 29 mills. The plaintiff overlooks the fact that, to carry out the plan to make the beginning of the fiscal year coincide with the time of payment of the first instalment of taxes for that year, it was necessary, during the time of the transition, to make use of a short fiscal period and to employ one grand list for two fiscal periods. If the use of one grand list for the taxing of property for a full year is not improper in meeting the practical problem of assessment, it cannot be held that the use of the same tax list twice so as to cover a total taxing period of twenty-two months is unconstitutional. That is what the General Assembly authorized.

Legislatures have broad powers of taxation. They

may prescribe the conditions, means and methods of the assessment, levy and collection of taxes. *F. H. Whittelsey Co.* v. *Windsor Locks,* 90 Conn. 312, 315, 97 A. 316; 2 Cooley, Constitutional Limitations (8th Ed.) p. 986; 1 Cooley, Taxation (4th Ed.) § 69; 51 Am. Jur. 233, § 174; *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U.S. 232, 237, 10 S. Ct. 533, 33 L. Ed. 892. They may select one class of property to be taxed and exempt another. *Carmichael* v. *Southern Coal & Coke Co.,* 301 U.S. 495, 509, 57 S. Ct. 868, 81 L. Ed. 1245; *New Haven Metal & Heating Supply Co.* v. *Danaher,* 128 Conn. 213, 219, 21 A.2d 383; 2 Cooley, Constitutional Limitations (8th Ed.) p. 825, n.1. They may classify taxpayers if there is a reasonable basis for the classification and all persons in any one class are treated uniformly. *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 198, 132 A. 561; *Montgomery* v. *Branford,* 107 Conn. 697, 707, 142 A. 574; 51 Am. Jur. 237, § 177. The classification is permissible if it bears a reasonable relation to a legitimate purpose of governmental action. *Welch* v. *Henry,* 305 U.S. 134, 144, 59 S. Ct. 121, 83 L. Ed. 87.

The question under consideration here is whether the special act is discriminatory. It is not if it treats all persons who are in the same class on an equal basis and if there is a reasonable distinction between the members of that class and all others. The class of persons affected by the special act is made up of those who owned property in Milford on October 1, 1950. They are all treated alike. It is not unreasonable to segregate them from persons who owned property at some time prior to that date or from those who owned property at some subsequent date. It is clear that some one date has to be fixed for the assessment of taxes. The plaintiff's only injury, if

any at all, is in common with the people generally. *Massachusetts* v. *Mellon,* 262 U.S. 447, 487, 43 S. Ct. 597, 67 L. Ed. 1078.

The court cannot concern itself with the wisdom of the legislation. It can invalidate it only if it is found to be unconstitutional. For the reasons already given, the legislation is constitutional. The remaining assignments of error deal with the finding. Nothing would be gained by making any correction.

There is no error.

In this opinion the other judges concurred.