CARL MILLER ET AL. *v.* GERALD J. HEFFERNAN,
TAX COMMISSIONER

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued June 8—decision released September 27, 1977

*John S. Murtha,* with whom were *John E. Silliman* and, on the brief, *William J. Keenan,* for the plaintiffs.

*Richard K. Greenberg,* assistant attorney general, with whom were *Ralph G. Murphy,* assistant attorney general, and *Carl R. Ajello,* attorney general, for the defendant.

LOISELLE, J.   This case comes to the court on a reservation from the Superior Court in Hartford County.   The questions stipulated by the parties, noted in the footnote below,[1] concern the constitutionality of two provisions of 1975 Public Acts, No. 75-213, subsequently codified as §§ 12-505 and 12-506 of the General Statutes.   The challenged provisions

[1] "1. Does section 43 of the act which provides for a $20,000 exemption violate the equal protection provisions of article first, section 20, of the Connecticut constitution?

"2. Does section 43 of the act which provides for a $20,000 exemption violate the equal protection provisions of section 1 of the 14th amendment to the United States constitution?

"3. Does section 43 of the act which provides for a $20,000 exemption constitute a taking of property without due process of law in violation of article first, section 8, of the Connecticut constitution?

"4. Does section 43 of the act which provides for a $20,000 exemption constitute a taking of property without due process of law in violation of section 1 of said 14th amendment?

"5. Does section 42 of the act defining taxpayer to include married people filing a joint federal return violate the equal protection provisions of article first, section 20, of the Connecticut constitution?

"6. Does section 42 of the act defining taxpayer to include married people filing a joint federal return violate the equal protection provisions of section 1 of the fourteenth amendment to the United States constitution?

"7. Was the defendant tax commissioner's denial of the plaintiffs' claim for refund in accordance with the law?

"8. If, in response to questions 1 through 6, any section of the act has been held to violate any provisions of the Connecticut constitution or the constitution of the United States, are the remaining provisions of the act pertaining to the tax on dividends affected?"

include § 43,[2] which imposes a 7 percent tax upon all dividends received by taxpayers with adjusted gross incomes of $20,000 or more, and § 42,[3] which defines "taxpayer" to include "a husband and wife both of whom are residents in this state and who file for the taxable year a single federal income tax return jointly."

The plaintiffs, a husband and wife who filed a joint federal income tax return, are residents of Connecticut with an adjusted gross income of more than $20,000. In accordance with the requirements of the noted provisions, they filed a state capital gains and dividends tax return, paying the prescribed tax. Simultaneously, they filed a claim for refund alleging the tax to be unconstitutional. Upon

[2] "[General Statutes] Sec. 12-506. IMPOSITION OF TAX. (a) A tax is hereby imposed at the rate of seven per cent on (1) all dividends earned, received in fact or constructively, accrued or credited to the taxpayer during his taxable year except that no such tax shall be imposed unless the taxpayer's adjusted gross income in such year equals or exceeds twenty thousand dollars, and (2) all net gains from the sale or exchange of capital assets which have been earned, received in fact or constructively, accrued or credited to the taxpayer during his taxable year subject to the exemptions allowed in section 12-506c, and section 12-506f, when applicable. (b) Any taxpayer whose adjusted gross income in any taxable year is less than twenty thousand dollars and whose net gains from the sale or exchange of capital assets in such year do not exceed (1) two hundred dollars in the case of a husband and wife and (2) one hundred dollars in all other cases shall not be subject to the tax imposed by subsection (a) of this section, and shall not be required to file any return under the provisions of section 12-508, for such year."

This provision has recently been repealed by 1977 Public Acts, No. 77-370, § 10. In its place a graduated form of the dividends tax is imposed on taxpayers with adjusted gross incomes of $20,000 or more. The rate of taxation ranges from a 1 percent tax on all dividends received by a taxpayer with an adjusted gross income of at least $20,000 but less than $22,000, up to a 9 percent tax on all dividends received by a taxpayer with an adjusted gross income of over $100,000.

[3] General Statutes § 12-505.

denial of their claim by the defendant, the plaintiffs appealed to the Superior Court, which reserved the matter for the advice of this court.

## I

The first two questions are whether § 43 of the act (General Statutes § 12-506), which provides for a tax on dividends received by taxpayers with adjusted gross incomes of $20,000 or more, violates article first, § 20, of the Connecticut constitution or § 1 of the fourteenth amendment to the United States constitution. These equal protection provisions have often been held to have a like meaning, imposing similar constitutional limitations. *Horton* v. *Meskill,* 172 Conn. 615, 639, 376 A.2d 359; *State* v. *Rao,* 171 Conn. 600, 601, 370 A.2d 1310. The questions will, therefore, be treated together.

Where legislation neither containing a suspect classification nor impinging upon a fundamental right is challenged on equal protection grounds, the burden is on the complaining party to establish that the statutory distinction is without rational basis. *Horton* v. *Meskill,* supra, 640; *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678. This standard is even more stringent where the challenged legislation pertains to taxation. As this court emphasized in *Kellems* v. *Brown,* supra, 487, quoting *Madden* v. *Kentucky,* 309 U.S. 83, 88, 60 S. Ct. 406, 84 L. Ed. 590, " 'in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classifica-

tion is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.'"

The plaintiffs claim that § 43 of the act, by singling out for taxation those dividends received by taxpayers with adjusted gross incomes of $20,000 or more, while leaving untaxed dividends received by those with lower adjusted gross incomes, constitutes just such "clear and hostile discrimination." It is to be emphasized that the question which must be addressed is not whether the prescribed mode of taxation is wise; *Bassett* v. *Rose,* 141 Conn. 129, 104 A.2d 212; but whether the classification it delineates is reasonable, resting upon "some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *F. S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989.

The plaintiffs urge that the $20,000 demarcation places an undue tax burden on a minority of taxpayers, alleging further that a disproportionate share of the burden falls on taxpayers over sixty-five years of age. In *Kellems* v. *Brown,* supra, this court determined that the legislature's decision to tax dividends while leaving untaxed other forms of investment income was not violative of equal protection guarantees. In reenacting this dividends tax, which of itself affects a minority of the total population of taxpayers, the legislature chose to exclude from its coverage those dividend-receiving taxpayers with adjusted gross incomes of less than

$20,000. Clearly this exemption further limits the affected class, yet this fact alone does not render the tax unconstitutional.

In *Independent Warehouses, Inc.* v. *Scheele,* 331 U.S. 70, 67 S. Ct. 1062, 91 L. Ed. 1346, the United States Supreme Court held as not violative of the equal protection clause a municipal ordinance selecting out for an annual licensing tax only those engaged in commercial warehousing, despite the fact that only one such operation existed within the township. Citing *Carmichael* v. *Southern Coal & Coke Co.,* 301 U.S. 495, 509, 57 S. Ct. 868, 81 L. Ed. 1245, the court noted (p. 86): "It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality in taxation. . . . This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation." See also *Ohio Oil Co.* v. *Conway,* 281 U.S. 146, 159, 50 S. Ct. 310, 74 L. Ed. 775.

The court in *Carmichael* further emphasized that a legislature is not bound to tax every member of a class or none, as long as some rational basis for the designated intermediary distinction exists. That such basis exists is to be assumed "if there is any conceivable state of facts which would support it." *Carmichael* v. *Southern Coal & Coke Co.,* supra, 509. The plaintiffs' own expressed concern provides one such obvious conceivable basis for the $20,000 demarcation: protection for those with limited, fixed incomes who, like some of the elderly, rely solely or heavily upon dividend income for their livelihood.

The plaintiffs, however, urge that no rational basis can be found for distinguishing between a taxpayer with a $19,999.99 adjusted gross income and one with a $20,000 adjusted gross income. Yet all laws, especially those in the tax area, are necessarily dotted with such fine distinctions. "It is only a difference in numbers which marks the moment when day ends and night begins, when the disabilities of infancy terminate and the status of legal competency is assumed. It separates large incomes which are taxed from the smaller ones which are exempt, as it marks here the difference between the proprietors of larger businesses who are taxed and the proprietors of smaller businesses who are not." *Carmichael* v. *Southern Coal & Coke Co.,* supra, 510. As long as some conceivable rational basis for the difference exists, "a classification is not offensive merely because it is not made with mathematical nicety." *Karp* v. *Zoning Board,* 156 Conn. 287, 299, 240 A.2d 845.

In the present case, the legislature's line may well have been drawn in light of the overall tax scheme, the fiscal needs of the state, and the economy. United States Department of Labor statistics show that in 1973, just prior to the enactment of the statute here at issue, the average cost for an urban family of four on a lower budget was $8181 a year, while the intermediate and higher levels were $12,626 and $18,201 respectively. In Hartford, the average cost for a family of four at the intermediate level was $13,721, and at the higher level, $19,127.[4] Conceivably, the legislature was attempting to draw a line which left the average family

[4] U.S. Department of Labor, Bureau of Labor Statistics, "Autumn, 1973, Urban Family Budgets and Comparative Indexes for Selected Urban Areas" (July 10, 1974).

budget intact. While such an approach is necessarily discriminatory, the equal protection clause proscribes only "invidious discrimination but does not demand identical treatment for all persons without consideration of differences in relevant circumstances." *Karp* v. *Zoning Board,* supra, 294. "If the . . . classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law." *Brown-Forman Co.* v. *Kentucky,* 217 U.S. 563, 573, 30 S. Ct. 578, 54 L. Ed. 883.

The plaintiffs emphasize the distinction between a notch exemption, such as that at issue here, and the more usual total exemption. The total exemption leaves a specified amount of income untaxed for all taxpayers, while the notch exemption essentially designates the class of taxpayers subject to the tax. For those taxpayers within the taxed class, all income denoted, in this case all dividend income, is subject to the tax without any threshold exemption. Thus, under the existing dividends tax, a taxpayer with an adjusted gross income of $20,000 would be subjected to a $1400 tax in the unusual event that all his income was derived from dividends, while a taxpayer only marginally less well endowed with dividends, receiving an adjusted gross income of $19,999, would be entirely exempt from dividend taxation. The plaintiffs argue that such discrepancy in treatment is palpably arbitrary and contrary to any concept of equality and fairness.

It should be noted that such tax effects have been considered by other courts and found not violative of equal protection. In *Magoun* v. *Illinois Trust & Savings Bank,* 170 U.S. 283, 18 S. Ct. 594, 42 L. Ed. 1037, the United States Supreme Court held rea-

sonable a classification subjecting a legatee of $10,000 to a 3 percent tax giving him a net of $9700, whereas the legatee of $10,001 was subject to a 4 percent tax and would receive only $9,600.96. In *Metropolis Theatre Co.* v. *Chicago,* 228 U.S. 61, 33 S. Ct. 441, 57 L. Ed. 730, the court sustained a tax of $1000 upon theatres charging admissions of $1 or more but only $400 upon theatres similarly situated charging admissions of less than $1. More recently, the Delaware Supreme Court upheld a tax which, in part, exempted from taxation those with earnings of $4000, while taxing those earning $4,000.01. *Betts* v. *Zeller,* 263 A.2d 290 (Del.).

In the present case, the tax attaches only to dividend income. According to a table attached to the stipulation, for the majority of taxpayers subject to the tax the bulk of income is not derived from dividends and will therefore remain untouched by this statute. Those few taxpayers whose adjusted gross incomes of more than $20,000 are derived solely from dividends are the exceptions.[5] Thus the extent to which this particular notch exemption actually permits any disparity in the tax treatment of income below the $20,000 demarcation in reality is not so great as to render the tax unreasonable. The statute "cannot be said to be arbitrary because it falls in the twilight zone between those members of the class which plainly can and those which plainly cannot expediently be taxed." *Carmichael* v. *Southern Coal & Coke Co.,* supra, 511. The notch exemption, combined with a 7 percent rate of taxation, is not unreasonable in view of the conceivable legislative objectives already discussed.

[5] During the debate concerning this bill a legislator asserted that such a taxpayer would have an investment portfolio worth $400,000 to $500,000. 18 H.R. Proc., pt. 7, 1975 Sess., p. 3143.

It should be observed, however, that while the court concedes the rationality of this form of exemption under the particular facts of this case, the rationality of notch exemptions generally is not here determined. As has been illustrated, notch exemptions have the potential for leaving a taxpayer subject to the tax with a lower net income after taxes than that of a taxpayer exempt from the tax. Taken to an extreme, this disparity in the treatment of income below the designated base could lose any rational connection with proper legislative objectives. Thus notch exemptions are to be carefully analyzed in terms of the rationality of the particular base and the rate of taxation. "The standard of what is arbitrary and unreasonable is not rigid. . . . [T]he question is usually one of degree." *In re Vanderbilt,* 281 N.Y. 297, 314, 22 N.E.2d 379, aff'd sub nom. *Whitney* v. *State Tax Commission,* 309 U.S. 530, 60 S. Ct. 635, 84 L. Ed. 909.

The plaintiffs rely heavily upon *Kalian* v. *Langton,* 96 R.I. 367, 192 A.2d 12, in which a court held as violative of equal protection a tax statute which immunized from taxation businesses with gross receipts of less than $30,000 while subjecting businesses with gross receipts in excess of this to a tax on all but $5000 of the total receipts. That case is not persuasive. A determination on the basis of one set of facts as to what is reasonable cannot be superimposed upon a different set of facts. The determination of rationality arises in each case from an evaluation of a complex of factors.

Since the plaintiffs have failed to establish that § 43 is invidious or palpably arbitrary, it is not necessary to respond to their further contentions that that provision cannot be justified on grounds

of administrative convenience or ability to pay.[6] Sufficient justification exists in those policy considerations within the legislative province. As noted above, "[t]he latitude of discretion is notably wide in the classification of property for purposes of taxation and the granting of partial or total exemptions upon grounds of policy." *Spector Motor Service, Inc.* v. *Walsh,* 135 Conn. 37, 64, 61 A.2d 89.

The answer to questions one and two is "no."

## II

The third and fourth questions inquire whether the $20,000 exemption provision constitutes a taking of property without due process of law in violation of article first, § 8, of the Connecticut constitution, or § 1 of the fourteenth amendment of the United States constitution. The common meaning attributed to those due process provisions allows for these questions to be treated as one. *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 168 Conn. 371, 374, 362 A.2d 778.

Except in unusual circumstances, the due process clause does not limit the taxing power of the legislature. As the court in *A. Magnano Co.* v. *Hamilton,* 292 U.S. 40, 44, 54 S. Ct. 599, 78 L. Ed. 1109, emphasized, "[t]hat clause is applicable to a taxing statute . . . only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and

---

[6] The plaintiffs contend that adjusted gross income is not always a true indication of ability to pay a tax. In ruling that a tax on gross receipts (as opposed to one on net income) was permissible, the United States Supreme Court stated: " 'The legislature is not required to make meticulous adjustments to avoid incidental hardships.' " *New York Rapid Transit Corporation* v. *New York,* 303 U.S. 573, 582, 58 S. Ct. 721, 82 L. Ed. 1024.

effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property."

The plaintiffs urge that the dividends tax imposed upon the specified class of taxpayers "cannot possibly bear any fiscal relation to the protection, opportunities and benefits given by the state in return" and hence, given such inequity between the burden imposed and the benefit received, is violative of due process guarantees. A tax is not required to be directly related to specific benefits received by the taxpayer. The United States Supreme Court, in upholding a tax on utilities to raise funds to relieve unemployment, held that "it is not constitutionally necessary that the classification be related to the appropriation." *New York Rapid Transit Corporation* v. *New York,* 303 U.S. 573, 587, 58 S. Ct. 721, 82 L. Ed. 1024. As the court in *Dane* v. *Jackson,* 256 U.S. 589, 598–99, 41 S. Ct. 566, 65 L. Ed. 1107, observed, "since the system of taxation has not yet been devised which will return precisely the same measure of benefit to each taxpayer or class of taxpayers, in proportion to payment made, as will be returned to every other individual or class . . . a state tax law will be held to conflict with the Fourteenth Amendment[7] only where it proposes, or clearly results in, such flagrant and palpable inequality between the burden imposed and the benefit received, as to amount to the arbitrary taking of property without compensation— 'to spoliation under the guise of exerting the power of taxing.'" The court went on (p. 600) to stress

[7] The court was rejecting a challenge based on the due process and equal protection clauses of the fourteenth amendment.

that the statute before it was not isolated, but one part of an "elaborate and involved system of state taxation" which would be affected by its ruling.

It cannot be said that the dividends tax with its $20,000 demarcation constitutes such "flagrant and palpable inequality between the burden imposed and the benefit received," particularly in light of the legislature's view of the state's overall tax structure. There is ample evidence to suggest that proponents of the act viewed its enactment as an attempt to equalize the overall tax burden. In a February 11, 1971, report of the Connecticut state revenue task force, the state's tax structure was found to be "largely regressive because of its heavy reliance upon property and excise taxes." A commentator supportive of a dividends tax suggested that such property and excise taxes result "in an overall higher burden on wage earners, small businesses, and low-income groups. In fact, it may be something of a paradox that the exclusion of the intangible property class from the tax base contributes as much to the regressive tax burden on these low-income individuals as anything else."[8] In the debate in both the senate and the house on the bill which became 1975 Public Acts, No. 75-213, legislators supportive of the bill spoke of its potential equalizing effect. 18 H.R. Proc., pt. 7, 1975 Sess., p. 3140 (remarks of Representative Tanger); id, p. 3144 (remarks of Representative Collins); 18 S. Proc., pt. 4, 1975 Sess., p. 1685 (remarks of Senator Beck).

Imposition of the $20,000 adjusted gross income base merely reflects a legislative determination of state policy. Where the case is not one of extreme

[8] Snyder, "Tax Policy in the 1971 Connecticut General Assembly," 46 Conn. B.J. 136, 163.

inequality "but involves rather a question of state policy, of a character which the people have been satisfied to leave to the judgment, patriotism and sense of justice of representatives in their state legislature," it is not for the court to intervene. *Dane* v. *Jackson,* supra, 601.

The answer to questions three and four is "no."

## III

Questions five and six concern § 42 of the act, which defines "taxpayer" to include married people who filed a joint federal tax return. The plaintiffs urge that this provision unjustifiably discriminates against married persons filing jointly, in violation of both article first, § 20, of the Connecticut constitution and § 1 of the fourteenth amendment to the United States constitution.

Like all other married taxpayers in this state, the plaintiffs are granted the option of filing their federal tax returns jointly or separately, according to what they consider to be in their own best interest, after weighing the benefit of each approach. They may elect to take advantage of the benefits accruing under federal law through joint filing or those granted under state law through separate filing. As the United States Supreme Court stated in *Merchants' & Manufacturers' Bank* v. *Pennsylvania,* 167 U.S. 461, 464, 17 S. Ct. 829, 42 L. Ed. 236, "[t]he inequality of result comes from the election of certain taxpayers to avail themselves of privileges offered to all" and this cannot constitute an infringement upon equal protection guarantees. See also *Wilson* v. *United States,* 376 F.2d 280, 285 (Ct. Cl.); *Astrotech, Inc.* v. *Commissioner of Taxation,* 309 Minn. 225, 244 N.W.2d 126.

The answer to questions five and six is "no."

## IV

In the light of our answers to the initial six questions presented for review, the answer to question seven is clear: The defendant tax commissioner's denial of the plaintiffs' claim for refund was in accordance with the law.

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.