UNITED ILLUMINATING COMPANY *v.* CITY OF
NEW HAVEN ET AL.

NEW HAVEN WATER COMPANY *v.* CITY OF
NEW HAVEN ET AL.

SOUTHERN CONNECTICUT GAS COMPANY *v.*
CITY OF NEW HAVEN ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, SPEZIALE and PARSKEY, Js.

Argued October 4, 1979—decision released February 19, 1980

*Harold C. Donegan,* corporation counsel, with whom was *Dennis L. Pieragostini,* deputy corporation counsel, for the appellants (defendants).

*John W. Barnett,* with whom was *Madeline F. Grossman,* for the appellee (plaintiff United Illuminating Company).

*Barry C. Hawkins,* with whom was *Susan J. Bryson,* for the appellees (plaintiffs New Haven Water Company and Southern Connecticut Gas Company).

SPEZIALE, J. The issue presented on this appeal is whether § 12-62a (e) of the General Statutes (hereinafter referred to as the "act" or Public Acts 1978, No. 78-256), a tax phase-in statute for real property, and the ordinance of the city of New Haven effective October 18, 1978, as amended effective January 2, 1979, implementing the act, are unconstitutional in that they violate the equal protection clauses of the fourteenth amendment to the United States constitution,[1] and the constitution of

---

[1] Section 1 of the fourteenth amendment to the United States constitution provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Connecticut, article first, §§ 1 and 20.[2]   We hold that both the statute and ordinance are constitutional.

The plaintiffs, the United Illuminating Company (hereinafter referred to as "UI"), the New Haven Water Company (hereinafter referred to as "Water Co.") and the Southern Connecticut Gas Company (hereinafter referred to as "Gas Co."), are public utilities which own property in the city of New Haven. The defendants are the city of New Haven (hereinafter referred to as "the city"), Martin J. Griffin, the tax collector of the city, and Edward Clifford, the tax assessor of the city. In three separate actions the plaintiffs each sought, inter alia, declaratory judgments that the act and the ordinance are unconstitutional.[3]  By agreement of all parties, the cases were combined for the purposes of trial and for appeal. From the declaratory judgments of the trial court holding the act and the ordinance unconstitutional as violative of the equal

[2] Sections 1 and 20 of article first of the constitution of Connecticut provide: "Sec. 1. All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

"Sec. 20. No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin or sex."

[3] Each of the plaintiffs also had sought the following injunctive relief: (1) a mandatory injunction requiring the defendant assessor to place on the tax list of October 1, 1978, all real property at not less than 70 percent of its true and actual value; (2) a permanent injunction restraining the defendants from assessing or collecting taxes on property of the plaintiffs in the city, real and personal, until the defendant assessor has placed on the tax list of October 1, 1978, all real property at not less than 70 percent of its true and actual value; (3) a temporary injunction restraining the defendants during the pendency of this litigation from assessing any taxes on the plaintiff on the basis of a tax list which does not assess at 70 percent of true and actual value all real property in the city, or

protection clauses of both the Connecticut and United States constitutions, the defendants have appealed to this court.

To place this case in its proper context, it is first necessary to consider certain legislation enacted prior to the adoption of Public Acts 1978, No. 78-256. Under § 12-62 of the General Statutes,[4] commencing October 1, 1978, the assessor of each municipality must revalue all real property no later than ten years following the last preceding revaluation and every ten years thereafter. Section 12-62a (b) of the General Statutes[5] mandates that all property, both realty and personalty, is to be assessed at a rate of 70 percent of true and actual value.

from collecting, attempting to collect or imposing any lien, penalty or interest on the plaintiff for any tax assessed on the basis of a tax list which does not assess at 70 percent of true and actual value all real property in the city. The trial court issued injunctions granting all the relief sought. In its preliminary statement of issues the city had raised the question of whether the trial court erred in granting the "mandatory injunction" and the "permanent injunction." The issue is now moot because on June 14, 1979, we granted the defendant's motion for review and vacated the trial court's order terminating the stay of judgment. Subsequent motions for us to open our June 24, 1979 order were denied.

[4] Section 12-62 of the General Statutes provides: "PERIODIC REVALUATION OF REAL ESTATE. Commencing October 1, 1978, the assessors of all towns, consolidated towns and cities and consolidated towns and boroughs shall, no later than ten years following the last preceding revaluation of all real property and every ten years thereafter, view all of the real estate of their respective municipalities, and shall revalue the same for assessment and, in the performance of these duties, except in any municipality where there is a single assessor, at least two of the assessors shall act together, and all valuations shall be separately approved by a majority of the assessors."

[5] Section 12-62a (b) of the General Statutes provides: "Each such municipality shall, no later than the close of its next revaluation required under the provisions of section 12-62, assess all property for purposes of the local property tax at a uniform rate of seventy per cent of present true and actual value, as determined under section 12-63."

Because real property in New Haven had not been revalued since 1964, the defendant tax assessor revalued such property as of October 1, 1978. Further, the city was required to abandon its prior assessment rate of 60 percent of true and actual value and to assess in accordance with § 12-62a (b) at the uniform rate of 70 percent of true and actual value.

In 1978, § 12-62a of the General Statutes was amended by the act, Public Acts 1978, No. 78-256, § 3 (now codified at § 12-62a (e) of the General Statutes).[6] The act, which took effect from its passage, essentially allows municipalities whose total real property assessments increased after revaluation pursuant to § 12-62 of the General Statutes by at least 30 percent over the assessment of the prior year to phase in the increase in assess-

[6] "Sec. 12-62a. UNIFORM ASSESSMENT DATE AND RATE. EXCEPTION TO UNIFORM RATE IN YEAR OF REVALUATION. DEFERMENT OF INCREASE IN ASSESSED VALUE ALLOWED. . . . (e) Any such municipality may, with respect to the assessment list in such municipality in a year in which a revaluation becomes effective, as required under section 12-62, provided such revaluation has resulted in an increase in the total assessed value of all real property on the assessment list in the year immediately preceding such revaluation of no less than thirty per cent of such total assessed value, commencing with any such assessment list for 1977, by vote of its legislative body and in the manner provided in this subsection, defer all or any part of the amount of such increase in the assessed value of real property included in the assessment list in the year such revaluation becomes effective, provided in the year such revaluation becomes effective and in any succeeding year in which such deferment is allowed by such municipality, the assessed value of such real property in the year immediately preceding revaluation shall be increased in such equal amounts in each of such years that the assessed value of such real property in the last year of such deferment, but in no event later than the fourth year following the year of such revaluation, shall be no less than the assessed value applicable to such property in the year of revaluation except for deferment of such increased assessment in accordance with this subsection."

ment. The legislative body of the qualifying munic-
ipalities may "defer all or any part" of the increase
in assessment provided that the amount deferred is
phased in in equal amounts over a period not to
exceed five years from the year of revaluation. The
phase-in plan is, of course, inapplicable to those
pieces of real property whose revaluation has not
resulted in a higher assessment. Further, by its
terms, the statutory phase-in applies only to real
property; personal property is uniformly assessed
at 70 percent of its real and actual value as required
by § 12-62a (b) of the General Statutes.

Pursuant to the act, the city adopted the ordi-
nance, as amended, which is set forth in the footnote
below.[7] Simply stated, the ordinance, as it pertains
to this case, provides that if the city is a qualifying
municipality (that is, if the assessment list of
October 1, 1978, reflects an increase in the total

---

[7]

"AN ORDINANCE PROVIDING FOR STAGED INCREASES
IN CERTAIN REAL PROPERTY TAX ASSESSMENTS.

WHEREAS; the City of New Haven is presently undergoing a
decennial revaluation of its real property for the purpose of recom-
puting the assessment thereof for real property tax purposes as
required by Section 12-62 of the Connecticut General Statutes; and

WHEREAS; Conn. P.A. 78-339 allows a municipality in which
revaluation results in an increase in total assessed value of real prop-
erty on the assessment list of 30% or more over the preceding list
may, by action of the local legislative body, to gradually phase-in
any such increase in assessments resulting from the state-mandated
revaluation over a term of five (5) years, commencing in the year
such revaluation becomes effective; and

WHEREAS; the increase in the total assessed value of real prop-
erty in the City of New Haven as a result of the state-mandated
revaluation is likely to exceed 30%; and

WHEREAS; the full increased assessment resulting from the
required revaluation would become effective on the October 1, 1978
Grand List, with the taxes based on such increased assessment to be

assessed value of real property which is at least 30 percent greater than the value of realty on the October 1, 1977 list) the increase in the assessed value of a parcel of real property is to be divided into five equal increments, one to be added to the tax list for each of the five successive years beginning October 1, 1978. In other words, the increase in assessment will be phased in at a rate of 20 percent per year for five years; and, therefore, real property whose assessment increased as a result of the 1978 revaluation will not be assessed

payable July 1, 1979 and thereafter, unless the Board of Aldermen adopts legislation authorizing the city of phase-in the new assessments.

NOW THEREFORE, BE IT ORDAINED BY THE BOARD OF ALDERMEN OF THE CITY OF NEW HAVEN THAT:

(1) In the event the October 1, 1978 assessment list results in an increase in the total assessed value of all real property in excess of thirty percent (30%) over the October 1, 1977 assessment list, all of such excess assessment on any piece of residential* real property shall be divided into five (5) equal increments, and each of said increments shall be effective on each of the succeeding five list years, thereby successively increasing each such residential* real property assessment increase until the full assessment originally fixed in October 1, 1978 is implemented.

(2) Any decrease in any real property assessment shall be fully effective on the list of October 1, 1978.

(3) Notice of the amounts of each of said phased assessments over said five (5) year period, shall be delivered to each taxpayer of residential* real property simultaneously with the notice of the October 1, 1978 assessment, and simultaneously with each of the succeeding four (4) annual assessment notices.

Enacted by the Board of Aldermen, October 4, 1978.
Approved by the Mayor, October 11, 1978.
Operative and in effect, October 19, 1978.

Attest:
WILLIAM JONES
City/Town Clerk"

* The word "residential" was deleted by an amendment "An Ordinance Amending a Previous Ordinance Concerning Staged Increases in Certain Real Property Tax Assessments."

at 70 percent of the true and actual value as determined by the 1978 revaluation until the 1982 grand list.

In its memorandum of decision, the trial court found the following: On the list of October 1, 1977, the true and actual value of all real property in the city was $842,519,410; on the October 1, 1978 list it was $1,264,915,897. This represented an increase of approximately 50 percent. Without the act and the ordinance, the assessed value of all real property on the October 1, 1978 list would have been $885,441,127 ($1,264,915,897 x 70%). Application of the act and ordinance resulted in the assessed value of all real property on the list being $549,762,456. Thus, the assessments on the list of October 1, 1978 amounted only to 43.5 percent of the true and actual value of all real property in the city. As stated previously, personal property was assessed at 70 percent of its true and actual value.

Because the act and ordinance resulted in a reduction in the grand list in excess of $335,000,000, the tax rate for both real and personal property in the city for the fiscal year beginning July 1, 1979 was approximately 66.5 mills as opposed to approximately 47.3 mills.[8] To the extent that the grand list decreases, the mill rate must increase for a constant revenue to be produced.

Both UI and the Water Co. own real and personal property located in New Haven; the Gas Co. owns personalty only. The court below found that, assuming the board of aldermen of the city would not make any substantial changes in the 1979 budget

---

[8] We note that the trial court's memorandum of decision incorrectly states ".0665" mills and ".0473" mills; however, it is clear that the court meant 66.5 mills and 47.3 mills.

or in the rate of 66.5 mills proposed by the board of finance of the city, the UI would pay $1,500,000 more in taxes during the first year of the phase-in than it would without the phase-in; the Water Co. would have to pay an additional $184,000 in taxes, and the Gas Co., $106,000. Because these taxpayers are affected in a pecuniary manner, their standing to bring the present action is clear. *Bell* v. *Planning & Zoning Commission,* 174 Conn. 493, 498, 391 A.2d 154 (1978); *Atwood* v. *Regional School District No. 15,* 169 Conn. 613, 617, 363 A.2d 1038 (1975). See also Practice Book, 1978, § 390 (a).

The trial court held both § 12-62a (e) of the General Statutes, which codifies Public Acts 1978, No. 78-256, § 3, and the ordinance unconstitutional under the equal protection provisions of both the state and federal constitutions. We will consider the constitutionality of the act and ordinance under both constitutions simultaneously because these provisions have a like meaning and impose similar constitutional limitations. *Leech* v. *Veterans' Bonus Division Appeals Board,* 179 Conn. 311, 312–13, 426 A.2d 289 (1979); *Caldor's Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 314-15, 417 A.2d 304 (1978); *Miller* v. *Heffernan,* 173 Conn. 506, 509, 378 A.2d 572 (1977), appeal dismissed, 434 U.S. 1057, 98 S. Ct. 1226, 55 L. Ed. 2d 758 (1978); *Horton* v. *Meskill,* 172 Conn. 615, 639, 376 A.2d 359 (1977); *Kellems* v. *Brown,* 163 Conn. 478, 485, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1972).

## I

In determining whether the act and ordinance constitute a denial of equal protection of the laws, we first consider the standard to be applied. The

plaintiffs claim that the phase-in act and ordinance violate the equal protection clauses of the United States and Connecticut constitutions because: (1) they provide for "systematic and intentional under-assessment" of certain property within a class of like property; and (2) the classifications resulting from the act and ordinance are "arbitrary and irrational." Thus, it appears that the plaintiffs are urging us to apply either of the above two standards when determining the constitutionality of the act and ordinance.

Where legislation, such as the phase-in act and ordinance, which neither contains a suspect classification nor impinges on a fundamental right is challenged on equal protection grounds, we have stated that the plaintiff to prevail must establish that the statutory classification is without rational basis. *Waterbury Motor Lease, Inc.* v. *Tax Commissioner,* 174 Conn. 51, 60, 381 A.2d 552 (1977); *Miller* v. *Heffernan,* supra, 509; *Kellems* v. *Brown,* supra, 486. We have explained the "rational basis" test numerous times in the past: The classifications must be reasonable and rest upon " 'some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' *F. S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989 [(1920)]." *Miller* v. *Heffernan,* supra, 510; *Kellems* v. *Brown,* supra, 490; *First Federal Savings & Loan Assn.* v. *Connelly,* 142 Conn. 483, 491, 115 A.2d 455, appeal dismissed, 350 U.S. 927, 76 S. Ct. 305, 100 L. Ed. 811 (1955).

Recently, in the context of regulation of economic activity, we described the "rational basis" test in

the following manner: "[A]n act regulating economic activity must bear a reasonable relationship to a proper legislative purpose in a manner that is neither arbitrary nor discriminatory. *Carroll* v. *Schwartz,* 127 Conn. 126, 130, 14 A.2d 754 (1940) . . . . The constitutional issue is whether legislative classifications or discriminations bear 'a rational relationship to a legitimate state end and [are] based on reasons related to the pursuit of that goal.' *Gentile* v. *Altermatt,* 169 Conn. 267, 295, 363 A.2d 1, appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976)." *Caldor's, Inc.* v. *Bedding Barn, Inc.,* supra, 314–15.

The United States Supreme Court has applied the "rational basis" test to legislation involving taxation. *San Antonio Independent School District* v. *Rodriguez,* 411 U.S. 1, 93 S. Ct. 1278, 36 L. Ed. 2d 16, reh. denied, 411 U.S. 959, 93 S. Ct. 1919, 36 L. Ed. 2d 418 (1973) ("[t]he constitutional standard under the Equal Protection Clause is whether the challenged state action rationally furthers a legitimate state purpose or interest"). Id., 55. Further, that court has a long history of applying the "rational basis" test to such legislation. See, e.g., *Allied Stores of Ohio* v. *Bowers,* 358 U.S. 522, 527, 79 S. Ct. 437, 3 L. Ed. 2d 480 (1959) (ad valorem tax on contents of warehouses except merchandise of nonresidents if held in storage warehouse for storage only); *Louisville Gas & Electric Co.* v. *Coleman,* 277 U.S. 32, 37, 48 S. Ct. 423, 72 L. Ed. 770 (1928) (tax imposed on the filing of a mortgage except mortgages executed to building and loan associations); *Carmichael* v. *Southern Coal & Coke Co.,* 301 U.S. 495, 509, 57 S. Ct. 868, 81 L. Ed. 1245 (1937) (tax on certain employers requiring them to pay a certain percentage of their monthly pay-

rolls into Unemployment Compensation Fund); *Air-Way Electric Appliance Corporation* v. *Day,* 266 U.S. 71, 85, 45 S. Ct. 12, 69 L. Ed. 169 (1924) (franchise fee charged by the state of Ohio against a foreign corporation for the privilege of exercising its franchises in Ohio); see also *Rast* v. *Van Deman & Lewis Co.,* 240 U.S. 342, 357, 36 S. Ct. 370, 60 L. Ed. 679 (1916) (tax on offering with merchandise bargained or sold in the course of trade any coupon, profit-sharing certificate, or other evidence of indebtedness or liability, redeemable in premiums). Even treatise writers have set forth the "rational basis" test as being applicable to legislative action in the area of taxation. Tribe, American Constitutional Law (1978) § 16-5, p. 1000; see also Nowak, Rotunda & Young, Constitutional Law (1978), pp. 361–62.

The plaintiffs rely primarily on *Sunday Lake Iron Co.* v. *Wakefield,* 247 U.S. 350, 38 S. Ct. 495, 62 L. Ed. 1154 (1918) (a two-page opinion); *Cumberland Coal Co.* v. *Board of Revision of Tax Assessments,* 284 U.S. 23, 28–29, 52 S. Ct. 48, 76 L. Ed. 146 (1931); *McCarthy* v. *Jones,* 449 F. Sup. 480 (D. Ala. 1978); and *Louisville & Nashville R. Co.* v. *Public Service Commission of Tennessee,* 249 F. Sup. 894, 899, 902 (D. Tenn. 1966), aff'd, 389 F.2d 247 (6th Cir. 1968); to support the "systematic and intentional underassessment" standard. The terms "systematic and intentional underassessment" appear in each of the above cases. In at least two cases, however, in which the United States Supreme Court has cited *Sunday Lake Iron Co.,* supra, it specifically has employed the "rational basis" test without indicating that it was adopting a new test. *Allied Stores of Ohio* v. *Bowers,* supra, 527; *Ohio Oil Co.* v. *Conway,* 281 U.S. 146, 160, 50

S. Ct. 310, 74 L. Ed. 775 (1930). Likewise, at least two cases citing *Cumberland Coal Co.,* supra, have employed the rational basis test. *Liggett Co.* v. *Lee,* 288 U.S. 517, 533, 53 S. Ct. 481, 77 L. Ed. 929 (1933); *Lawrence* v. *State Tax Commission of Mississippi,* 286 U.S. 276, 283, 52 S. Ct. 556, 76 L. Ed. 1102 (1932). Simply because we are confronted with a case involving the assessment value of property for the purposes of taxation is no reason to create a new, distinct test. The lower federal court cases and state cases cited by the plaintiffs do not convince us to the contrary.

The plaintiffs would have us attach to the words "systematic and intentional" a pejorative meaning which they do not necessarily bear. Presumably whenever the legislature creates classifications (i.e., exemptions) in taxation legislation it intends to include certain taxpayers in one group and to exclude those not so included. This would be systematic and intentional; yet, it would not be per se unconstitutional.

Although we follow only the rational basis test, we do point out that even under the test of constitutionality urged by the plaintiffs, the act and ordinance are constitutional. Under that test, systematic and intentional underassessment of certain property *within a class of like property* is what is prohibited. Realty and personalty are not part of a class of like property. Neither are realty which has appreciated and that which has not.

## II

### A

In part I of this opinion we briefly have mentioned some of the applicable principles in determining the constitutionality of a statute. "Where

legislation neither containing a suspect classification nor impinging upon a fundamental right is challenged on equal protection grounds, the burden is on the complaining party to establish that the statutory distinction is without rational basis. *Horton* v. *Meskill* [172 Conn. 615, 640, 376 A.2d 359 (1977)]; *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 [(1973)]." *Miller* v. *Heffernan,* supra, 509. A classification is allowable if it bears a reasonable relationship to a legitimate purpose of governmental action. *Bassett* v. *Rose,* 141 Conn. 129, 134, 104 A.2d 212 (1954).

"That the states may classify property for taxation; may set up different modes of assessment, valuation and collection; may tax some kinds of property at higher rates than others . . . these are among the commonplaces of taxation and of constitutional law." *Nashville, Chattanooga & St. Louis Ry.* v. *Browning,* 310 U.S. 362, 368, 60 S. Ct. 968, 84 L. Ed. 1254 (1940). "A legislature is not bound to tax every member of a class or none." *Carmichael* v. *Southern Coal & Coke Co.,* supra, 509. "This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation." Id.

Further, a state, in exercising its taxing power, "is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value." *Allied Stores of Ohio* v. *Bowers,* supra, 527. "As long as some *conceivable* rational basis for the difference exists, 'a classification is not offensive merely because it is not made with mathematical nicety.' *Karp* v.

*Zoning Board,* 156 Conn. 287, 299, 240 A.2d 845 [(1968)]." *Miller* v. *Heffernan,* supra, 512. (Emphasis added.) No scheme of taxation has been devised which is completely free of all discriminatory impact. *San Antonio Independent School District* v. *Rodriguez,* supra, 41. " 'The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. . . . [T]he passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. . . . It has . . . been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. . . .' *Madden* v. *Kentucky,* 309 U.S. 83, 87–88 [60 S. Ct. 406, 84 L. Ed. 590] (1940)." *San Antonio Independent School District* v. *Rodriguez,* supra, 40–41.

The burden on one attacking the constitutionality of a statute is great. There is a presumption of constitutionality which attaches to a statutory enactment; the burden which rests upon a party asserting its invalidity is to establish that it is unconstitutional beyond a reasonable doubt. *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 569, 409 A.2d 1020 (1979); *Engle* v. *Personnel Appeal Board,* 175 Conn. 127, 134, 394 A.2d 731 (1978); *State* v. *Warren,* 169 Conn. 207, 217, 363 A.2d 91 (1975); *Wilson* v. *Connecticut Product Development Corporation,* 167 Conn. 111, 114, 355

A.2d 72 (1974); *Kellems* v. *Brown,* supra. "It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts *at the time the law was enacted* must be assumed. *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U.S. 61, 78 [31 S. Ct. 337, 55 L. Ed. 369 (1911)]. It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not within the competency of the courts to arbitrate in such contrariety." *Rast* v. *Van Deman & Lewis Co.,* supra, 357. (Emphasis added.) See also *McGowan* v. *Maryland,* 366 U.S. 420, 425–26, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961); *Carmichael* v. *Southern Coal & Coke Co.,* supra, 509.

"Courts in passing upon the validity of a legislative act do not feel justified in declaring it void unless there is a clear and unequivocal breach of the constitution . . . . We approach the question with great caution, examine it with infinite care, make every presumption and intendment in favor of validity, and sustain the act unless its invalidity is, in our judgment, beyond a reasonable doubt." *Kellems* v. *Brown,* supra, 486, quoting *Edwards* v. *Hartford,* 145 Conn. 141, 145, 139 A.2d 599 (1958). The one attacking the legislation has the burden to negative every conceivable basis which might support it. *Madden* v. *Kentucky,* 309 U.S. 83, 88, 60 S. Ct. 406, 84 L. Ed. 590 (1940); *Waterbury Motor Lease, Inc.* v. *Tax Commissioner,* supra, 60–61; *Kellems* v. *Brown,* supra, 487–88. "Only by faithful adherence to this guiding principle of judicial review of legislation [presumption of constitutionality] is it possible to preserve to the legislative

branch its rightful independence and its ability to function." *Carmichael* v. *Southern Coal & Coke Co.,* supra, 510.

## B

Finally, we consider whether there is any conceivable basis which might support the act and ordinance. It cannot be assumed that the legislature could not have reasonably concluded that by the coincidence of §§ 12-62 (revaluation required every ten years) and 12-62a (b) (uniform assessment rate of 70 percent) of the General Statutes numerous owners of real property might have been faced with a dramatic and sudden increase in taxes. Because of the coincidence of these statutes, not only is appreciation in realty which accrued over a period of years being compressed into a single revaluation, but also assessment is imposed at a uniform rate of 70 percent of true and actual value (a rate which is higher than that previously imposed at least by the city). Perhaps to ameliorate the potential hardship and deleterious consequences on the social structure of certain communities that the above statutes might impose—for example, numerous foreclosures—the legislature enacted § 3 of Public Acts 1978, No. 78-256. This is a legitimate purpose for governmental action. Indeed, "[i]t is the duty and function of the legislature to discern and correct evils, and by evils we do not mean some definite injury but obstacles to a greater public welfare." *Rast* v. *Van Deman & Lewis Co.,* supra, 357.

Having determined that the purpose of the act and ordinance is a legitimate one, we now examine the classifications drawn by the act and ordinance to determine if they invalidate the legislation. The

parties have delineated three distinct classifications contained in the act and the ordinance: first, municipalities in which revaluation has resulted in an increase of no less than 30 percent in the total assessed value of real property over the previous year's total real property assessment as opposed to municipalities in which the increase is less than 30 percent; second, real property as opposed to personal property; and third, real property having increased assessments as opposed to real property having no increase or having a decrease in assessment. The question is whether these classifications have a rational basis. We need to examine each to see if any state of facts reasonably can be conceived to sustain it.[9]

As to the *first* classification, the trial court indicated in its memorandum of law that "[t]here seems to be no particular reason for . . . the designation of 30% as the dividing line." We agree that the 30 percent figure is arbitrary; however, " 'when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark.' *Louisville Gas & Electric Co.* v. *Coleman,* 277 U.S. 32, 41, 48 S. Ct. 423, 72 L. Ed. 770 [1928]." *Gentile* v. *Altermatt,* 169 Conn.

---

[9] "A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action." *Carmichael* v. *Southern Coal & Coke Co.,* 301 U.S. 495, 510, 57 S. Ct. 868, 81 L. Ed. 1245 (1937).

267, 297, 363 A.2d 1, appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976). "[A]ll laws, especially those in the tax area, are necessarily dotted with such fine distinctions. 'It is only a difference in numbers which marks the moment when day ends and night begins, when the disabilities of infancy terminate and the status of legal competency is assumed.' *Carmichael* v. *Southern Coal & Coke Co.*, supra, 510." *Miller* v. *Heffernan*, supra, 512. "[I]n every instance where a line must be drawn or a cutoff established there are those who fall directly on either side. This is but one of the vagaries of life to which we accustom ourselves and which we accept in our daily affairs, but we cannot, for this reason, find the act unreasonable in its purpose and overall effect." *Gentile* v. *Altermatt*, supra, 297–98. If a conceivable rational basis exists for the distinction, then the classification passes constitutional muster.

Several rational bases are conceivable for the classification regarding the 30 percent increase in real property assessments which triggers the act and ordinance. This percentage increase requirement ensures that there be no deviation from the 70 percent assessment rate imposed by § 12-62a (b) of the General Statutes unless there is sufficient overall impact in terms of increased assessment to justify the legislative remedy made available by the act. Additionally, municipalities not having the threshold increase of 30 percent are prevented from incurring the administrative costs of implementing a phase-in program; the use of the act is confined to those municipalities in which the potential of significantly enlarged tax burdens on real property owners or the possible disruption of the real estate market is sufficiently substantial to justify the

administrative costs of the phase-in program. Further, the requirement of a 30 percent increase helps ensure that the phase-in process is equitable. Where such a city-wide problem does not exist, and the overall real property assessments do not necessitate a phase-in of assessment, the act cannot be used solely to benefit selected individuals or for other political purposes.

As to the *second* classification, the real property-personal property distinction, a conceivable rational basis likewise exists. The legislature may have drawn this line because it considered that there was a potential for a sudden and dramatic increase in the assessment of realty because revaluation of such property for assessment purposes may occur at intervals as far apart as ten years. General Statutes § 12-62. The previous revaluation of a piece of real property revalued in 1978 may have occurred in 1968. The legislature may well have feared that although the appreciation in the value of that property may have been gradual over the years, the cumulative appreciation may have been so substantial that when reflected in the subsequent assessment, forced sales, foreclosures, and other conceivable hardships might result. Such a dramatic increase in assessment may have been thought not to exist for personal property which is revaluated annually. With annual revaluation there would be no cumulative appreciation accruing over a period of years which would be compressed into one revaluation. The real property-personal property distinction certainly is not irrational.

Further, in light of what the legislature may have considered an already poor real estate market, it may have wanted to cushion an increased tax bur-

den on real property owners during a revaluation year by having it shared by all property owners within a municipality. It is interesting to note that although the act extends to commercial, residential, industrial, and other real property, legislative history reveals that homeowners were of special concern, and the act was to insulate them from at least some of the burden of revaluation. See, e.g., 21 H.R. Proc., pt. 10, 1978 Sess., pp. 4237–39; 4241–42; 4249; 4251–52; 4253.

The major thrust of the plaintiffs' argument appears to be against the *third* classification, that between real property which has appreciated in value and that which has not. The plaintiffs claim that this classification violates equal protection because, inter alia, "those whose real property has increased sufficiently in value will be subsidized by those owners of real property which has decreased, remained the same or increased less in value." Although such a "subsidy" may result from the act and ordinance, the classification does not constitute a denial of equal protection of the laws because of the existence of at least the following conceivable rational bases. To achieve the purpose of mitigating the burden of increased assessments of real property in a revaluation year, a logical distinction exists between pieces of realty which have appreciated since the prior revaluation and those which have not. The legislature might have reasonably believed that only owners of appreciated property potentially would face a significant "double barrel" tax impact resulting from the coincidence of the legislation involving mandatory periodic revaluation; General Statutes § 12-62; and that imposing a uniform assessment rate; General Statutes § 12-62a (b). Owners of unappreciated

property would be in less need of protection from a sudden and dramatic increase in tax burden. Likewise, the distinctions between pieces of real property which have appreciated more than others are rational. Inasmuch as the phase-in formula is based on equal amounts of the increase of assessment being added to the prior assessment value for a maximum of five years, owners of realty who arguably receive the greatest protection from a sudden, significant increase in assessment are precisely those who would otherwise be threatened with the greatest increase in assessment.

Moreover, the distinction between realty with an increased assessment and that without such an increase conceivably gives a municipality an administratively convenient and cost effective method to implement the phase-in program. Rather than applying a complex formula to all realty, it is more convenient and economical to apply that formula to realty with an increased assessment. Administrative convenience and expense in the measurement or collection of taxes provide justification for the difference in treatment among classes of taxpayers. *Carmichael* v. *Southern Coal & Coke Co.,* supra, 511; 16A C.J.S., Constitutional Law, § 490, p. 252.

The plaintiffs challenge this classification also on the ground that the phase-in legislation has the effect of prolonging inequities—those benefiting from the phase-in would be those who were underassessed previously. Although the phase-in act may result in what may be perceived as some continued temporary inequities that the mandatory periodic revaluation and uniform assessment rate were designed to ameliorate, it cannot be disputed

that the legislature may proceed one step at a time to remedy a harm. "[T]he Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all." *Dandridge* v. *Williams,* 397 U.S. 471, 486–87, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970). Neither can the act be condemned because it imperfectly effectuates the legislature's goals. *San Antonio Independent School District* v. *Rodriguez,* supra, 51.

When the act and ordinance were enacted, the state and local legislators necessarily lacked precise information about future budgets, mill rates, and assessments. In retrospect, perhaps another mechanism or formula may have been more well-suited to achieve the goals sought by the legislature.[10] Whether the prescribed mode of taxation is wise, however, is not a matter before us. *Waterbury Motor Lease, Inc.* v. *Tax Commissioner,* supra, 62; *Bassett* v. *Rose,* 141 Conn. 129, 135, 104 A.2d 212 (1954); *Carroll* v. *Schwartz,* 127 Conn. 126, 130, 14 A.2d 754 (1940).

The plaintiffs have failed to sustain their burden of proving that the legislation is unconstitutional beyond a reasonable doubt. Thus, they have not overcome the presumption of constitutionality of the act and ordinance. We hold that the act and ordinance do not constitute a denial of equal protection of the laws, that they are constitutional, and that the trial court erred in its declaratory judgments holding them unconstitutional.

---

[10] In fact, the legislature itself may have reconsidered the wisdom of the act inasmuch as it subsequently placed a moratorium on its implementation by municipalities that previously had not enacted phase-in ordinances. Public Acts 1979, No. 79-612 (f).

There is error, the judgments are set aside, and the cases are remanded with direction to render judgments declaring that § 12-62a (e) of the General Statutes and the ordinance of the city of New Haven effective October 18, 1978, as amended effective January 2, 1979, are not in violation of the equal protection clauses of the United States or Connecticut constitutions.

In this opinion the other judges concurred.