CIRCUIT-WISE, INC. *v.* COMMISSIONER
OF REVENUE SERVICES
(13772)

SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued March 8—decision released June 12, 1990

*David P. Atkins,* with whom was *Bette L. Bono,* for the appellant (plaintiff).

*Paul M. Scimonelli,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, for the appellee (defendant).

HULL, J. This appeal involves a constitutional challenge to the Hazardous Waste Assessment statute, General Statutes § 22a-132.[1] Pursuant to this statute,

---

[1] General Statutes § 22a-132 provides in pertinent part: "HAZARDOUS WASTE ASSESSMENT. (a) There shall be paid to the commissioner of revenue services by (1) a generator of hazardous waste required to file a manifest pursuant to the Resource Conservation and Recovery Act of 1976 (42 U.S.C. 6901 et seq.), as from time to time amended, and regulations adopted by the department of environmental protection, (2) a treatment facility

the defendant, the commissioner of revenue services, assessed taxes against the plaintiff, Circuit-Wise, Inc. The plaintiff protested the assessment, which protest the defendant rejected. The plaintiff thereafter sought de novo judicial review of the assessment.[2] The case was tried to a state trial referee who rendered judgment for the defendant and dismissed the plaintiff's appeal. From this judgment the plaintiff appealed to the Appellate Court. We subsequently transferred the case to ourselves pursuant to Practice Book § 4023. We affirm the judgment of the trial court.

The trial court's memorandum of decision reveals the following facts. The plaintiff is a manufacturer of printed circuit boards for the automotive and computer industries. By-products generated by the plaintiff's manufacturing activity are classified as "hazardous waste." These by-product wastes are transported off-site and are then either disposed of in a regulated facility or recycled and resold in their reprocessed state. Federal and state statutes and regulations require that

required to file a manifest for hazardous wastes resulting from their treatment process and (3) a generator of hazardous waste shipping hazardous waste to treatment or disposal facilities located in the state, an assessment of (A) five cents per gallon of metal hydroxide sludge from wastewater treatment of electroplating or metal finishing operations and six cents per gallon of any other hazardous waste entered on a manifest in gallons, (B) one-half of one cent per pound of metal hydroxide sludge from wastewater treatment of electroplating or metal finishing operations and three-quarters of one cent per pound of any other hazardous waste entered on a manifest in pounds or (C) ten dollars per cubic yard of metal hydroxide sludge from wastewater treatment of electroplating or metal finishing operations and twelve dollars for any other hazardous waste entered on a manifest in cubic yards. . . ."

This statute was amended, effective July 3, 1989, by No. 89-365 of the 1989 Public Acts.

[2] General Statutes § 12-33 provides in pertinent part: "Any town or company aggrieved by the action of the commissioner [of revenue services] may, within one month from the time of such action, make application in the nature of an appeal therefrom to the superior court of the judicial district in which such applicant is located, which shall be accompanied by a citation to said commissioner to appear before said court."

generators of hazardous waste, such as the plaintiff, prepare a manifest that lists all hazardous waste substances shipped from their facilities. Pursuant to § 22a-132, the defendant assessed the plaintiff for taxes on the hazardous waste products for which the plaintiff had filed a manifest for the period March, 1983, through December 31, 1984. Upon the defendant's rejection of the plaintiff's protest of the assessment, the plaintiff instituted the present action.

The plaintiff challenged at trial the constitutionality of § 22a-132. The plaintiff first argued that the statute was violative of the equal protection guarantees of the state and federal constitutions, because it taxed some but not all hazardous substances, thereby creating classifications that bear no rational relationship to the statute's stated purpose. Specifically, the plaintiff claimed that by taxing substances deemed to be "hazardous waste" and not taxing other "hazardous substances," the statute creates an unconstitutionally underinclusive classification. The plaintiff claimed in the alternative that because the statute taxes all hazardous wastes, including the wastes that are recycled and reintroduced into the stream of commerce, the statute operates in an arbitrary and capricious manner and is thereby violative of the due process and equal protection guarantees of the state and federal constitutions.

The court concluded that § 22a-132 was not unconstitutional, either on its face or as applied to the plaintiff. The court's decision was based on the premise that, notwithstanding the express revenue raising provisions of § 22a-132, the purpose of the statute was "clearly for regulation and not for revenue." The court stated that regulation pursuant to the police power "is not subject to the constitutional restrictions applicable to the taxing power." The policy of the state, according to the court, is to control and manage hazardous waste

from the time of its generation until the time of its safe disposition. Accordingly, the court stated that "[h]azardous waste is a subject of compelling state interest in the exercise of its police power in duly safeguarding the health, safety and welfare of the people." The court gave no credence to the plaintiff's claim that the classification in § 22a-132 was underinclusive in its coverage, stating that there is "no fundamental right to endanger the public health or safety or to pollute the environment, and that it would be repugnant to reason and justice to maintain that one party is justified in doing so because another party is doing likewise." The court also found that "[a]s regards a generator of hazardous waste there is no reasonable distinction between the hazardous waste that ultimately is disposed of in a regulated land-fill, and the hazardous waste that proceeds to recycling or reclamation. The actual or potential hazard is present in both processes, and the classification is consistent and has a rational relationship to the state and legislative purpose of Chapter 445 of the general statutes in safeguarding the health and safety of the public and safety and welfare of the environment." The court then concluded that the statute created no unreasonable classification so as to deny the plaintiff its constitutional rights. The plaintiff did not move the trial court under Practice Book § 4051 to articulate its memorandum of decision concerning its conclusory statements of constitutional law.

On appeal the plaintiff challenges: (1) the court's conclusion that § 22a-132, in taxing "hazardous wastes" but not other "hazardous substances," does not violate the equal protection guarantees of the federal and state constitutions; (2) the court's failure to address whether the classification established in § 22a-132 has any rational relation to the expressed revenue raising purpose of § 22a-132; and (3) the court's conclusion that

§ 22a-132, by taxing all hazardous waste entered on a manifest, including that sent for recycling, does not violate the due process and equal protection guarantees of the federal and state constitutions. We consider the first and second claims combined to constitute only one issue and will treat them accordingly.

## I

We turn first to the plaintiff's claim that § 22a-132 establishes an unconstitutional classification in violation of the equal protection guarantees of the federal and state constitutions.[3] In support of its claim, the plaintiff refers to the following testimony presented at trial. The plaintiff purchases various raw or virgin chemical materials from suppliers to accomplish the plating and etching operations that are part of its manufacturing process. These chemicals are classified under federal statute and regulations as "hazardous materials" in that they exhibit one or more of the standard characteristics of such materials: corrosivity, toxicity, reactivity and ignitability. New chemical by-products are produced by the plaintiff's manufacturing process. These by-products are classified as "hazardous waste" under the federal Resource Conservation and Recovery Act of 1976. The plaintiff presented testimony at trial indicating that many of the characteristics of "hazardous waste" are identical to "hazardous materials." The plaintiff's expert testified that in their original form, the hazardous materials supplied to the plaintiff were as dangerous or more so than the hazardous waste produced by the plaintiff. This testimony was unrefuted by the defendant.

---

[3] The fourteenth amendment to the United States constitution provides in part: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Similarly, article first, § 20 of the Connecticut constitution provides in relevant part: "No person shall be denied the equal protection of the law . . . . "

As the plaintiff correctly points out, pursuant to § 22a-132, a generator of "hazardous waste" incurs a tax when it includes that waste on a manifest, while a producer of hazardous materials, not subject to the manifest requirement, is not assessed such a tax. The plaintiff argues that the history of § 22a-132 and its terms disclose that the purpose of the statute is to provide funds for the emergency spill response fund[4] established under General Statutes § 22a-451.[5] Section

[4] General Statutes § 22a-132 (d) provides in pertinent part: "The revenue collected in accordance with this section shall be deposited in the emergency spill response fund established under section 22a-451"

[5] General Statutes § 22a-451 (d) provides: "There is established a revolving fund to be known as the emergency spill response fund, for the purpose of providing money for (1) the containment and removal or mitigation of the discharge, spillage, uncontrolled loss, seepage of filtration of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes including the state share of payments of the costs of remedial action pursuant to the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 USC 9601 et seq.), as amended; (2) provision of potable drinking water pursuant to section 22a-471; (3) completion of the inventory required by section 22a-8a; (4) the removal of hazardous wastes that the commissioner deems to be a potential threat to human health or the environment; (5) the accomplishment of the purposes of sections 22a-134aa to 22a-134hh, inclusive, except that the amount expended for the purpose of this subdivision shall not exceed eighty thousand dollars per year and (6) (A) the provision of short-term potable drinking water pursuant to subdivision (1) of subsection (a) of section 22[a]-471 and the preparation of an engineering report pursuant to subdivision (2) of subsection (a) of said section when pollution of the groundwaters by pesticides has occurred or can reasonably be expected to occur; (B) the study required by Special Act 86-44 and (C) as funds allow, education of the public on the proper use and disposal of pesticides and the prevention of pesticide contamination in drinking water supplies. The amount expended under subdivision (6) of this subsection shall not exceed the sum of the amount credited to the emergency spill response fund from the fees collected pursuant to sections 22a-66b to 22a-66j, inclusive, and section 22a-54a, fifty per cent of the amount credited therein from the fees collected pursuant to subsection (g) of section 22a-50, and one-third of the amount credited therein from the fees collected pursuant to (i) subsection (f) of section 22a-54 and (ii) subsection (c) of section 22a-56. Any money recovered pursuant to subsections (a) and (c) of this section shall be deposited in the general fund and credited to the fund established under this section and shall be used

22a-451, however, is concerned not only with hazard-
ous waste, but with a variety of matters wholly
unrelated to such waste. The plaintiff claims, therefore,
that the practical effect of § 22a-132 is to assess a
generator of hazardous waste for a fund that pays for
the clean-up of numerous substances produced and
shipped by parties who escape taxation completely.
Accordingly, the plaintiff argues that § 22a-132 is viola-
tive of equal protection. We are unpersuaded.

We note at the outset that we disagree with the trial
court's conclusion that § 22a-132 is primarily a regula-
tory statute. Regulation of the management and dis-
posal of hazardous waste is controlled by an intricate
web of interrelated state and federal laws and regula-
tions. Although enforcement of the waste assessment
may have an incidental regulatory fallout, we conclude
that § 22a-132 is primarily a tax statute.

In order to analyze the constitutionality of this stat-
ute, we must first detail the principles applicable to
equal protection analysis. " 'When a statute is chal-
lenged on equal protection grounds, whether under the
United States constitution or the Connecticut consti-
tution, the reviewing court must first determine the
standard by which the challenged statute's constitu-
tional validity will be determined. If, in distinguishing
between classes, the statute either intrudes on the exer-
cise of a fundamental right or burdens a suspect class
of persons, the court will apply a strict scrutiny stan-
dard wherein the state must demonstrate that the chal-
lenged statute is necessary to the achievement of a
compelling state interest. *In re Griffiths,* 413 U.S. 717,
721, 93 S. Ct. 2851, 37 L. Ed. 2d 910 (1973); *San Anto-
nio Independent School District* v. *Rodriguez,* 411 U.S.

to meet any contractual obligations incurred by the commissioner pursuant
to subsection (b) of this section for such containment and removal or miti-
gation."

1, 30, 93 S. Ct. 1278, 36 L. Ed. 2d 16, reh. denied, 411 U.S. 959, 93 S. Ct. 1919, 36 L. Ed. 2d 418 (1973); *Eisenstadt* v. *Baird,* 405 U.S. 438, 447, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972); *Harper* v. *Virginia State Board of Elections,* 383 U.S. 663, 667, 86 S. Ct. 1079, 16 L. Ed. 2d 169 (1966). If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge. *Trimble* v. *Gordon,* 430 U.S. 762, 767, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977); *Massachusetts Board of Retirement* v. *Murgia,* 427 U.S. 307, 312, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976). . . .

" 'Under the rational basis test, "[t]he court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way." *Pierce* v. *Albanese,* 144 Conn. 241, 249, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957); see *New Orleans* v. *Dukes,* 427 U.S. 297, 303, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976); *McGowan* v. *Maryland,* 366 U.S. 420, 425, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961); *Caldor's, Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 315, 417 A.2d 343 (1979). For our purposes here the test is the same under both the federal and state constitutions. *Caldor's, Inc.* v. *Bedding Barn, Inc.,* supra, 314; *Horton* v. *Meskill,* 172 Conn. 615, 639, 376 A.2d 359 (1977).' *Ryszkiewicz* v. *New Britain,* 193 Conn. 589, 596–99, 479 A.2d 793 (1984).

"Moreover, there is 'the established principle that those who challenge the constitutionality of a state statute bear the heavy burden of demonstrating beyond a reasonable doubt that the presumption of its validity has been overcome. See, e.g., *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973);

*Adams* v. *Rubinow,* 157 Conn. 150, 152–53, 251 A.2d 49 (1968). A party challenging a tax statute on the grounds of equal protection bears an even greater burden because "[a]s this court emphasized in *Kellems* v. *Brown,* supra, 487, quoting *Madden* v. *Kentucky,* 309 U.S. 83, 88, 60 S. Ct. 406, 84 L. Ed. 590 [1940], ' "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which [the United States Supreme] Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." ' " *Miller* v. *Heffernan,* [173 Conn. 506, 509–10, 378 A.2d 572 (1977), appeal dismissed, 434 U.S. 1057, 98 S. Ct. 1226, 55 L. Ed. 2d 758 (1978)]. Nonetheless, even for the purposes of taxation, the legislature does not have an unlimited power to create classifications. The classifications that it selects cannot be arbitrary but " 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' " (Citations omitted.) *Allied Stores* v. *Bowers,* 358 U.S. 522, 527, 79 S. Ct. 437, 3 L. Ed. 2d 480 (1959); see *United Illuminating Co.* v. *New Haven,* 179 Conn. 627, 636–37, 427 A.2d 830 (1980); *Kellems* v. *Brown,* supra, 490. Recognizing that any plan of taxation necessarily has some discriminatory impact; *San Antonio Independent School District* v. *Rodriguez,* [supra, 41]; *United Illuminating Co.* v. *New Haven,* supra, 641; we have previously stated the operative test for the validity of a tax statute to be the following: " 'As long as some *conceivable* rational basis for the difference exists, "a classification is not offensive merely because it is not made with

mathematical nicety." ' " (Emphasis in original.) (Citations omitted.) *United Illuminating Co.* v. *New Haven,* supra, 640–41.' *Gunther* v. *Dubno,* 195 Conn. 284, 291–92, 487 A.2d 1080 (1985)." *Harbor Ins. Co.* v. *Groppo,* 208 Conn. 505, 508–11, 544 A.2d 1221 (1988).

It is undisputed that § 22a-132 provides for an assessment against a generator of hazardous waste required to file a manifest, while not extending that assessment to generators or shippers of "hazardous material" not subject to the manifest requirement. We are thus faced with the question of whether there is any conceivable rational basis for this classification. We look first to General Statutes (Rev. to 1983) § 22a-114 which states the policy underlying chapter 445, entitled "Hazardous Waste": "Legislative finding; policy of the state. The general assembly finds that improper management of hazardous wastes has contaminated the water, soil and air of the state thereby threatening the health and safety of Connecticut citizens; that the economic benefits to the state from industry are jeopardized if hazardous waste disposal facilities are not available in Connecticut; that the safe management of hazardous wastes, including state involvement, is mandated by the Federal Resource Conservation and Recovery Act of 1976 (42 USC 6901 et seq.) and implementing regulations; that the siting of hazardous waste disposal facilities is in the best interest of Connecticut's citizens and that the public should participate in siting decisions. Therefore the general assembly declares that it is the policy of the state to assure the siting of hazardous waste disposal facilities so that the health and safety of Connecticut's citizens and the environmental and economic interests of the state are protected. The purpose of this chapter is to establish a process for the siting of hazardous waste facilities that will protect the health and safety of Connecticut citizens and assure responsible economic development and to have that

siting process be at least as strict as that required by federal law." We also note that General Statutes § 22a-115 (1) states that " '[h]azardous waste' means any waste material, except by-product material, source material . . . which may pose a present or potential hazard to human health or the environment when improperly disposed of, treated, stored, transported, or otherwise managed . . . ."[6]

The finding of the general assembly as articulated in § 22a-114 forcefully attributes the contamination of the water, soil and air of the state, threatening the health and safety of Connecticut citizens, to hazardous wastes. No mention is made in this powerful statement of state policy of any such threat to our citizens from hazardous materials. It is clear that this policy *deliberately* did not extend to hazardous materials, because the definition of "hazardous waste" contained in § 22a-115 specifically excludes from that definition "source material." It is also of significance that those persons required, pursuant to § 22a-132 (a), to pay the assessment include a broad spectrum of those involved in the handling of hazardous waste: (1) a generator of hazardous waste required to file a manifest, such as the plaintiff in this case; (2) a treatment facility required to file a manifest for hazardous wastes resulting from their treatment process; and (3) a generator of hazardous waste shipping that waste to treatment or disposal facilities located in the state. The entire statutory construct concerns environmental contamination that may arise from hazardous waste.

We need look only to the plaintiff's brief to ascertain a very evident conceivable rational basis for the distinction between hazardous wastes and hazardous materials. The plaintiff states that "[t]he underlying

[6] "[B]y-product material" in this definition does not refer to or exempt the waste generated by the plaintiff's process.

purpose of the manifest requirement is simply to enable state and federal regulatory bodies to track individual shipments of hazardous waste 'to assure that' such shipments are 'designated for treatment, storage or disposal in, and arrive at . . . facilities . . . for which a permit has been issued.' 42 U.S.C. § 6922 (5). See also 45 Fed. Reg. 86969 (Dec. 31, 1980) (amending 40 C.F.R. § 262.10 and § 264.71)." Additionally, the plaintiff states that "the only possible justification for singling out hazardous wastes apart from hazardous material for special regulation would be the special risk inherent in substances that are discarded: dumping into sites which lack proper permits or which otherwise lack controls to prevent or minimize long term harm to the environment."

The need to "track" shipments of hazardous waste to assure that they end up in a licensed treatment facility is obviously based on the economic reality that the cost of the properly regulated disposal of such waste may encourage producers of the waste to seek illegal disposal methods with resultant environmental damage to the state and its citizens. We take judicial notice of widespread disastrous instances of such illegal disposal within this state and throughout the nation. By contrast, as the plaintiff admits, the manifest requirements do not apply to hazardous materials, not designated as "wastes," since such shipments are made for commercial or industrial use. The economic pressure tempting producers of hazardous waste to "cut corners" in its disposal simply do not apply to shippers of materials, though hazardous, that are being shipped for commercial or industrial use. Rather, economic common sense dictates that hazardous materials be delivered to the intended users undamaged in any way.

The legislature, in enacting § 22a-132, allocated liability for funding of the emergency spill response fund to those parties whose production of hazardous wastes

contributes to the contamination of the water, soil and air of the state. Stephen Hitchcock, director of hazardous materials management of the Connecticut department of environmental protection, in commenting on the bill which became § 22a-132, stated that the proposed bill was a good one because "costs associated with hazardous wastes should be paid by those producing the waste." Conn. Joint Standing Committee Hearings, Environment, Pt. 4, 1982 Sess., p. 794. This basis for the classification contained in this statute accords entirely with the legislative finding concerning hazardous waste set forth in § 22a-114.[7]

As we stated previously, " ' "[t]he broad discretion as to classification possessed by a legislature in the field

---

[7] We are not persuaded by four cases cited by the plaintiff for its claim that General Statutes § 22a-132 is so underinclusive in its coverage as to offend equal protection guarantees. In *Cleburne* v. *Cleburne Living Center, Inc.,* 473 U.S. 432, 446, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985), the court found that the application of a zoning regulation to a proposed group home for the mentally retarded violated the applicant's equal protection rights because there was not a rational basis for treating such housing differently than other care and multiple dwelling facilities. The court concluded that the regulation "appears to us to rest on an irrational prejudice against the mentally retarded . . . ." Id., 450. In *Williams* v. *Vermont,* 472 U.S. 14, 23, 105 S. Ct. 2465, 86 L. Ed. 2d 11 (1985), the court invalidated a Vermont automobile use tax, because it was applied arbitrarily. In *Brown* v. *Barry,* 710 F. Sup. 352, 356 (D.D.C. 1989), the court found a regulation prohibiting the issuance of vending permits to bootblacks, while allowing such permits for other street vendors, unconstitutional on equal protection grounds. The court, applying the rational basis test, could find no plausible connection between the uniqueness of a bootblack and the purpose of the law. Finally, in *Long Island Lighting Co.* v. *Cuomo,* 666 F. Sup. 370, 422 (N.D.N.Y. 1987), appeal dismissed, 888 F.2d 230 (2d Cir. 1989), the court found that the application of a restriction to a power company's rate base that applied only to privately owned utilities which were sole owners of a nuclear power plant and not to nuclear power plants owned by more than one party, when measured against the purposes of the statute, was "so under-inclusive that it must be deemed irrational" and hence a violation of the plaintiff's equal protection rights. Id., 423. The present case is clearly distinguishable in that we have articulated the rational relationship between the classification challenged and the purpose of the statute.

of taxation has long been recognized. . . . [T]he passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. . . . " *Madden* v. *Kentucky,* [supra, 87–88].' *San Antonio Independent School District* v. *Rodriguez,* supra, 40–41. . . . 'It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts *at the time the law was enacted* must be assumed. *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U.S. 61, 78 [31 S. Ct. 337, 55 L. Ed. 369 (1911)]. It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not within the competency of the courts to arbitrate in such contrariety.' (Emphasis in original.) *Rast* v. *Van Deman & Lewis Co.,* 240 U.S. 342, 357, 36 S. Ct. 370, 60 L. Ed. 679 (1916)." *United Illuminating Co.* v. *New Haven,* supra, 641–42.

We conclude that the determination of the trial court, that the plaintiff had not proven beyond a reasonable doubt that § 22a-132 was violative of the federal and state guarantees of equal protection of the laws, was correct.

## II

The plaintiff claims in the alternative that even if the classification created by § 22a-132 withstands constitutional scrutiny, its application to hazardous waste sent for recycling operates in an arbitrary and capricious manner in violation of the state and federal constitutional guarantees of equal protection and due process.[8] We do not agree.

---

[8] During the relevant tax period, approximately 53 percent of the plaintiff's manifested hazardous waste was returned to the stream of commerce after reprocessing.

"The equal protection and the due process provisions of both [the state and federal] constitutions have the same meaning and the same limitations. *Miller* v. *Heffernan,* supra, 516–17; *Horton* v. *Meskill,* [supra, 639]; *Kellems* v. *Brown,* [supra, 485]; *Katz* v. *Brandon,* 156 Conn. 521, 537, 245 A.2d 579 (1968); *People* v. *Santiago,* 51 App. Div. 2d 1, 10, 379 N.Y.S.2d 843 (1975). Under any and all of these provisions, an act regulating economic activity must bear a reasonable relationship to a proper legislative purpose in a manner that is neither arbitrary nor discriminatory. *Carroll* v. *Schwartz,* 127 Conn. 126, 130, 14 A.2d 754 (1940). 'The court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way. If an enactment meets this test, it satisfies the constitutional requirements of due process and equal protection.' *Pierce* v. *Albanese,* [supra, 249]." *Caldor's, Inc.* v. *Bedding Barn, Inc.,* supra, 314–15.

We concur with the following finding of the trial court: "As regards a generator of hazardous waste there is no reasonable distinction between the hazardous waste that ultimately is disposed of in a regulated land-fill, and the hazardous waste that proceeds to recycling or reclamation. The actual or potential hazard is present in both processes, and the classification is consistent and has a rational relationship to the state and legislative purpose of Chapter 445 of the general statutes in safeguarding the health and safety of the public and safety and welfare of the environment." We conclude that the legislature could well have determined that the danger of dumping hazardous waste on the way to a legitimate recycling operation justified the imposition of the hazardous waste assessment on such

shipments as well as wastes otherwise disposed of.[9] Accordingly, the application of the assessment to the plaintiff's reclaimed wastes is so connected to the general purposes of hazardous waste management in Connecticut that it does not violate the equal protection or due process clauses of the federal and state constitutions.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[9] Public Acts 1989, No. 89-365, § 4, effective July 5, 1989, amended General Statutes § 22a-132 to provide that any hazardous waste that is recycled shall not be subject to assessment.