[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The named plaintiff in both cases filed appeals from the decisions of The Mansfield Zoning Board of Appeals (ZBA) which upheld the cease and desist orders issued by the town's zoning enforcement officer. This Court finds that the cease and desist orders were filed to enforce a zoning regulation, which the Court finds to be unconstitutionally vague.
Therefore, the named plaintiff's appeals are sustained. The Town of Mansfield is ordered to rescind the cease and desist orders. The town shall take no further action to enforce the subject regulation, until the regulation is amended to correct the constitutional defect.
I. Facts and Procedural History
In these companion cases, plaintiff, Elliot Nanos, appeals two decisions of the Mansfield Zoning Board of Appeals which upheld cease and desist orders issued to the plaintiff by the Mansfield Zoning Enforcement Agent for using two different single family residences as fraternity houses. Also named as plaintiffs in the first case (CV93-052304) are the University of Connecticut fraternity Sigma Alpha Epsilon (third count), and the four tenants (second count) of the single family residence owned by Nanos at 197 North Eagleville Road in Storrs, Connecticut: Edward Peters, Griffin Handley, John Walberg, and Steve Hartman. Also named as plaintiffs in the second case (CV93-052305) are the University of Connecticut fraternity Tau Kappa Epsilon (third count), and the four tenants (second count) of the single family residence owned by Nanos at 219 North Eagleville Road in Storrs, Connecticut: Brett Minogue, Brian Phelps, Richard Goulet, and Michael Rinaldi.[1]
CT Page 8812
Pursuant to General Statutes § 8-8, plaintiff Elliot Nanos brings these appeals as the owner and landlord of the single family residences at 197 and 219 North Eagleville Road in Storrs, Connecticut. Both of these properties are the subject of cease and desist orders the plaintiff seeks to overturn.
In each case, a group of four male students at the University of Connecticut entered into a one year lease with plaintiff Elliot Nanos for a single family residence owned by him near the Storrs campus (1st Return of Record (ROR) Item 7; 2nd ROR Item 7). Besides Nanos, the individual plaintiffs in each action are those students, each of whom are members of the fraternity named in their respective action. (1st ROR Item 7; 2nd ROR Item 7). In the first case the lease commenced June 1, 1992 (ROR Item 7), and in the second case the lease commenced July 1, 1992 (ROR Item 7).
On October 7, 1992, Curt Hirsch, the Mansfield Zoning Enforcement Agent ("ZEA"), served a cease and desist order upon Nanos and Sigma Alpha Epsilon (SAE) for the property at 197 North Eagleville Road. Later, on November 2, 1992, ZEA Hirsch served a cease and desist order on Nanos and Tau Kappa Epsilon (TKE) for the property at 219 North Eagleville Road. Both cease and desist orders claimed that the respective properties were being used as fraternity houses and ordered Nanos and the two fraternities to cease using the houses as fraternity houses within ten days of the order.
In the first case, all plaintiffs appealed from the cease and desist order to the Mansfield Zoning Board of Appeals ("Board") (ROR Items 3, 4). In the second case, only plaintiff Elliot Nanos appealed to the Board (ROR Items 3, 4). On January 13, 1993, the Board held public hearings on both appeals, following which the Board denied the appeals to overturn the ZEA's determination that the subject residences were being used as fraternity houses in violation of Article IV.B.31 of the Mansfield Zoning Regulations. In the first case, the reason given for the denial was that "[t]he zoning agent demonstrated beyond a shadow of a doubt, clear and concise information, that the house is in violation." (ROR Item 14, p. 33). In the second case, the Board only stated that "[a]gain, the Zoning Agent did an exemplary job in providing clear and convincing evidence." (ROR Item 6, p. 9). Notice of the Board's decisions was published in the Willimantic Chronicle on January 22, 1993 (1st ROR Item 15; 2nd ROR Item 10). CT Page 8813
The respective plaintiffs in both cases filed the present appeals on February 1, 1993, alleging that the Board, in upholding the cease and desist orders, acted illegally, arbitrarily and in abuse of its discretion. Specifically, the plaintiffs contend, inter alia, that the zoning regulations are unconstitutionally vague as applied to them in violation of their due process rights. (First count, paragraphs 4 C, D E of plaintiff's complaints in each case). Plaintiff also claims the regulations were enforced in a discriminatory manner against plaintiff and his tenants. (First count, paragraph 4 F of plaintiff's complaints in each case). On May 20, 1994, the parties appeared and argued this appeal as well as the plaintiff's objections to the record in both appeals.
II. Jurisdiction
A. Exhaustion
"[A] party who has a statutory right of appeal from the decision of an administrative agency may not, instead of appealing, institute an independent action to litigate the very issue which the appeal is designed to test." Butzgy v.Glastonbury, 203 Conn. 109, 116, 523 A.2d 1258 (1987), citingCarpenter v. Planning Zoning Commission, 176 Conn. 581,409 A.2d 1029 (1979). When a party has failed to exhaust his administrative remedies, the Court lacks subject matter jurisdiction over the administrative appeal, making the action subject to dismissal. Butzgy v. Glastonbury, supra.
In the first case, all plaintiffs were parties to the appeal to the Zoning Board, and have exhausted their administrative remedies. In the second case, the TKE fraternity and the four lessees of the property at 219 North Eagleville Road were not parties to the appeal to the Zoning Board (ROR Items 3, 4). Since they failed to exhaust their administrative remedies, the Court lacks subject matter jurisdiction over the appeals of plaintiffs Tau Kappa Epsilon and the four lessees of the property at 219 North Eagleville Road: Brett Minogue, Brian Phelps, Richard Goulet, and Michael Rinaldi. Accordingly, counts two and three of the appeal in the second case are dismissed, because the plaintiffs therein failed to exhaust their administrative remedies.
B. Aggrievement
CT Page 8814
The present appeals are made pursuant to General Statutes § 8-8(a), which permits appeals from decisions of zoning boards of appeal "only by one `aggrieved' by a contested decision."Primerica v. Planning Zoning Commission, 211 Conn. 85, 92,558 A.2d 646 (1989). "The question of aggrievement is essentially one of standing." DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369,373, 588 A.2d 244 (1991). Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Wood Assoc. v. Planning and ZoningCommission, 219 Conn. 303, 307, 592 A.2d 953 (1991). It is the plaintiff's burden to allege and prove aggrievement. Id. The issue of aggrievement is an issue of fact to be determined by the trial court. Primerica v. Planning Zoning Commission, supra, 93.
There is a twofold test for compliance with the aggrievement requirement. Id. The party claiming aggrievement must first "demonstrate a specific, personal and legal interest in the subject matter of the decision," and second, must establish that the interest "has been specially and injuriously affected by the decision." Id., 92-93. An owner of the subject property is aggrieved and entitled to bring an appeal. Winchester WoodAssoc. v. Planning and Zoning Commission, supra, 307.
Whether a lessee of property has enough interest in the property to be an aggrieved party depends on the circumstances of each case; Primerica v. Planning Zoning Commission, supra, 93; including whether the lessee is in control of the property, whether the lessee is in possession or has a future right of possession of the property, and whether the lessee's interest is consistent with the owner's interest in the property. Michel v.Planning Zoning Commission, 28 Conn. App. 314, 324-25,612 A.2d 778, cert. denied, 223 Conn. 923, 614 A.2d 1324 (1992). "[I]n order to retain standing as an aggrieved person, a party must have and must maintain a specific, personal and legal interest in the subject matter of the appeal throughout the course of the appeal;" Primerica v. Planning Zoning Commission, supra,211 Conn. at 94; having an interest in the property at the outset of the administrative proceeding is not enough. Id.
At the hearing on May 20, 1994, plaintiff Elliot Nanos testified that he is the owner of the properties at 197 and 219 North Eagleville Road. He was issued a cease and desist order for each property on October 7, 1992 and November 2, 1992, respectively. Both orders were upheld by the Board. Based on CT Page 8815 his testimony, plaintiff Elliot Nanos has demonstrated his aggrievement sufficient to maintain both appeals.
With respect to the aggrievement of the other plaintiffs in the first case, Nanos also testified that he leased the property at 197 North Eagleville Road to the plaintiffs Edward Peters, Griffin Handley, John Walberg, and Steve Hartman. These four plaintiffs, as lessees who were in possession of the property at the time the cease and desist order was issued, had a specific personal and legal interest in the subject matter of this appeal at the time of the Board hearing. Michel v. Planning ZoningCommission, supra, 28 Conn. App. at 324-25. At the Court hearing, however, Nanos offered no evidence as to whether these plaintiffs continue to lease the premises in question. Since it is the plaintiff's burden to prove aggrievement, and the plaintiff offered no evidence that the four plaintiff-lessees have maintained their interest throughout the course of this appeal; Primerica v. Planning Zoning Commission, supra,211 Conn. at 94; the Court finds that the four lessees have not demonstrated their aggrievement. Accordingly, the Court finds that the four student plaintiffs in the first case do not have standing to appeal. Therefore, count two of the first appeal is hereby dismissed.
As to the aggrievement of plaintiff, SAE fraternity, Nanos offered no evidence that the fraternity has an interest in the subject property. In fact, SAE's lack of interest in the property is the very basis of Nanos' appeal. Although the SAE fraternity was served with, and subject to, the October 7, 1992 cease and desist order, it has not demonstrated any specific, personal and legal interest in the subject matter of this appeal such that this Court can find it aggrieved by the Board's decision. The Court finds that the fraternity is not aggrieved and does not have standing to appeal. Accordingly, the third count of the first appeal is hereby dismissed.
The Court finds that Elliot Nanos ("plaintiff") is the only plaintiff with standing to pursue either appeal.
III. Scope of Review
In reviewing the decision of an administrative agency, the Court may grant relief on appeal only where the local authority has acted illegally, arbitrarily or in abuse of its discretion.Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554, CT Page 8816 573, 538 A.2d 1039 (1988). The Court is to determine whether the record reasonably supports the conclusions reached by the agency.Primerica v. Planning and Zoning Commission, supra,211 Conn. at 96. Where the zoning board has stated the reasons for its decision, the Court is not at liberty to probe beyond them.Caserta v. Zoning Board of Appeals, 28 Conn. App. 256, 59,610 A.2d 713 (1992). When a zoning board gives inadequate reasons for its decision, the Court must search the record to determine whether a basis exists for the action taken. Stankiewicz v.Zoning Board of Appeals, 15 Conn. App. 729, 737, 546 A.2d 919
(1988).
"Zoning regulations cannot be too general in their terms and must contain known and fixed standards that apply to all similar cases." Sowin Associates v. Conservation Inland WetlandsCommission, 23 Conn. App. 370, 377, 580 A.2d 91 (1990). A zoning "[c]ommission's regulations must be reasonably precise in subject matter and reasonably adequate and sufficient to give both the commission and those affected by its decision notice of their rights and obligations." Id.
IV. Law
A. Objections to the Return of Record
As a preliminary matter, plaintiff Elliot Nanos, through his attorney, made objections to the administrative records in both appeals. In the first case, plaintiff objects to the attachments to Item 8 in the Return of Record, which is a memorandum by ZEA Hirsch, dated January 4, 1993. Specifically, the plaintiff argues that the attachments to this memorandum, which consist of, advertisements previously printed in the Daily Campus newspaper, are irrelevant and immaterial because all but one of the five ads appeared before the present tenants leased the property. The plaintiff contends that the fifth ad is immaterial because it does not ever mention Nanos' property. However, the advertisements do relate to the house's alleged use as a fraternity house, which helps the finder of fact by establishing a historical perspective in this case. Accordingly, the Court may consider the ads in its decision and plaintiff's objection is overruled.
Second, plaintiff challenges the inclusion of Item 9 of the Return of Record, several photographs of a large party celebrating the Yale/UConn football game on October 3, 1992. The CT Page 8817 plaintiff challenges the photos' inclusion because none of them depict the house at 197 North Eagleville Road, which is the subject of the first appeal. The plaintiff argues that the photos serve no other purpose than to prejudice the plaintiff without any relationship to the property in question. The plaintiff admits that there was a party that day, but contends that it was located between the residences located at 203 and 207 North Eagleville Road, neither of which is the subject of these appeals (ROR Item 6, p. 22-23). At the hearing, the defendant Board argued that the party was more than one premises wide and included 197 North Eagleville Road. Furthermore, the defendant claims that the SAE signs shown in the photos demonstrate that the fraternity was one of the sponsors of the party. Plaintiff's objection to these photographs is sustained, because they do not contain photos of the house at 197 North Eagleville Road, and therefore are not relevant to whether that house is being used as a fraternity house. These photographs have not been considered by the Court in its decision.
Third, the plaintiff objects to the inclusion of Items 12 and 13 in the Return of Record for the first case since those letters and notes were not made a part of the record at the hearing, but only included later at the Board's business meeting. At the Court hearing, the defendant Board's attorney admitted that if the notes were not introduced at the Board's hearing as to the 197 North Eagleville Road property, they could not be part of the Return of Record. Since Items 12 and 13 were only added to the record at the business meeting which followed the hearing (ROR Item 6, p. 32), plaintiff's objection is sustained. The Court has not considered these items in its decision.
Finally, the plaintiff objects to the inclusion of Item 14 in the first case, and Item 9 in the second case, both of which are notices of denial containing reasons for the denial. The plaintiff argues that the actual notices sent did not contain the reasons for the denial, as do the notices contained in each Return of Record. The plaintiff submits that altered documents should not be included in the Return of Record. However, the reasons indicated on those documents were taken verbatim from the transcript of the Board's hearing. Since the transcript is already properly before the Court, the plaintiff is not prejudiced in either appeal by the inclusion of Items 14 and 9, respectively, in the Returns of Record. Accordingly, plaintiff's objections to these items are overruled. CT Page 8818
B. Constitutionality of Regulation as Applied
The constitutional claims the plaintiff pursues in this appeal are grounded in the due process and equal protection provisions of the federal and state constitutions (U.S. Const., amend. XIV; Conn. Const., Article I, § 8 and § 20). As a threshold question, the Court must decide whether the plaintiff can challenge the constitutionality of the zoning regulation as applied to them in an administrative appeal. D'Addario v.Planning Commission, 25 Conn. App. 137, 141, 593 A.2d 511
(1991).
 The general rule as stated in Florentine v. Darien, 142 Conn. 415, 115 A.2d 328 (1955), and as reiterated in Cioffoletti v. Planning Zoning Commission, 209 Conn. 544, 522 A.2d 796 (1989), is that a party `cannot seek the relief provided in an ordinance or statute and later in the same proceeding raise the question of its constitutionality.' Florentine v. Darien, supra, 428. There are instances, however, when the rule does not apply. It is not applicable when the legislature has provided otherwise. Cioffoletti v. Planning Zoning Commission, supra, 550. It also does not apply when the party challenging the constitutionality of the particular regulation or ordinance does not seek relief pursuant to either. Chevron Oil Co. v. Zoning Board of Appeals, 170 Conn. 146, 365 A.2d 387 (1986); . . . (Other citations omitted.)
D'Addario v. Planning Commission, supra, 25 Conn. App. at 141.
In Helbig v. Zoning Commission, 185 Conn. 294, 299,440 A.2d 940 (1981), the Court discussed other exceptions to the general rule prohibiting a party from questioning the constitutionality of an ordinance in the same proceeding in which it sought relief of the ordinance. The Court in Helbig likened a constitutional attack on an ordinance to an attack on a statute and stated:
 There are, however, exceptions to such a rule at both the federal and state level. Where compliance with the statute under attack is under compulsion, compliance can hardly be deemed voluntary, and one will not be estopped to challenge the statute. . . . CT Page 8819 Stated another way, estoppel will not prevent a challenge to the validity of a statute where there is compliance with a statute that requires a duty mandatory in form, accompanied by penalties for failure to obey its provisions, or which is otherwise coercive; in such cases, the element of voluntary action (or embracing the benefits of such a statute) essential to waiver or estoppel is absent.
Helbig v. Zoning Commission, supra, 185 Conn. at 299.
In the present case, the plaintiff did not attempt to use the regulation in any way to his benefit. Rather, the plaintiff has consistently maintained through the Board appeal and this present appeal, that the regulation defining fraternity houses is unconstitutionally vague. Furthermore, in November, 1993, plaintiff Nanos was compelled to respond to a lawsuit brought by the town of Mansfield through its zoning officer. That suit threatened Nanos with an injunction and fines, and claimed that there were ongoing violations of the cease and desist order. That lawsuit was filed despite the fact that the ZEA, at the Board hearing, admitted that Nanos had committed no violations after the cease and desist orders were issued (ROR Item 6, p. 12). Accordingly, this Court finds that the plaintiff meets the exceptions set forth in D'Addario v. Planning Commission, supra, and Helbig v. Zoning Commission, supra, and should not be estopped from raising his constitutional claims in this administrative appeal. The Court, therefore, shall consider his claims as to the vagueness of the regulation as applied.
Our Supreme Court has held that the burden of showing that a regulation is unconstitutionally vague rests with the plaintiff.Felsman v. Zoning Commission, 31 Conn. App. 674, 681,626 A.2d 825 (1993), citing Russo v. East Hartford, 179 Conn. 250, 257,425 A.2d 1282 (1979), cert. denied, 445 U.S. 940, 100 S.Ct. 1334,63 L.Ed.2d 773 (1980). Zoning regulations are entitled to a presumption of constitutionality, giving the party challenging an ordinance the heavy burden of proving its unconstitutionality beyond a reasonable doubt. Beacon Falls v. Postick, 212 Conn. 570,585, 563 A.2d 285 (1989).
To demonstrate that a regulation is unconstitutionally vague as applied, a litigant must "demonstrate beyond a reasonable doubt that he had inadequate notice of what was prohibited or CT Page 8820 that he was the victim of arbitrary and discriminatory enforcement." Connecticut Building Wrecking Co. v. Carothers,218 Conn. 580, 590, 590 A.2d 447 (1991).
 To demonstrate his lack of notice of what was prohibited, the challenging party must establish that a person of ordinary intelligence would not be able to know whether his conduct is permitted or prohibited under the statute. Bottone v. Westport, 209 Conn. 652, 658, 553 A.2d 576 (1989). "`The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" State v. Chetcuti, 173 Conn. 165, 167, 377 A.2d 263
(1977), quoting Jordan v. DeGeorge, 341 U.S. 223, 231-32, 71 S.Ct. 703, 95 L.Ed. 886 (1950).
Connecticut Building Wrecking Co. v. Carothers, supra.
In the present case, the plaintiff challenges the constitutionality of Article IV.B.30 and Article IV.B.31 of the Mansfield Zoning Regulations as applied. Article IV.B.30 defines "Fraternity/Sorority" as:
 Any group of persons organized for a common purpose, interest or pleasure, and recognized by the Office of Greek Life at the University of Connecticut or Eastern Conn. State University.
Article IV.B.31 defines "Fraternity/Sorority House" as:
 Any building or portion of a building used for accommodating a fraternity or sorority for the purpose of lodging, dining, entertaining, or assembly.
In both cases, the cease and desist order appealed from defines a fraternity house, as set forth in Article IV.B.31. The orders inform the plaintiff that fraternity houses are prohibited in R-40 zones, states that "the structure . . . is . . . being used by the [named fraternity] as a fraternity house, in flagrant violation of the Regulations," and orders the plaintiff to "cease the use of the single-family structure as a fraternity house within ten days . . ."
In neither case does the cease and desist order define for CT Page 8821 the plaintiff which activities are allowed and which are prohibited by the fraternity house regulation. The regulations do not prohibit a fraternity member from living at the premises, yet once a fraternity member does live there, arguably, any
activity of lodging, dining, entertaining, or assembly involving that fraternity member could be construed as a violation of the regulation. As applied to the present cases, it is impossible to determine which activities are allowed on the subject property.
The regulation defining fraternity houses does not distinguish between the types of activities permissible at individual residences and those of a traditional fraternity house. The definition is so vague as to allow single fraternity members living in an R-40 zone to be zoned out of the area, or to prevent them from associating with even one other member of the fraternity at the premises.
In the first case, plaintiff Nanos' four tenants of 197 North Eagleville Road all were members of the SAE fraternity. These four tenants represent just eight percent of the fraternity's fifty members (ROR Item 6, p. 9). In the second case, Nanos' four tenants of 219 North Eagleville Road all were members of the TKE fraternity, a UConn fraternity with 43 members. In both cases, the plaintiff testified that the tenants' lease was in their individual names and the rent was paid by the lessees individually. In neither case is the subject fraternity a party to the lease. The other members of each fraternity live throughout the Storrs area, some on campus, some off (ROR Item 6, p. 9). Under the present regulations a tenant of Nanos' houses may not invite a fraternity member over to dine, and arguably, may not dine together if more than one is a fraternity member. Furthermore, in order for Nanos, as a landlord, to be sure he is not in violation of the challenged regulation, he is forced not to rent to any fraternity members.
Based on the foregoing, this Court finds that plaintiff has proven beyond a reasonable doubt that a person of ordinary intelligence would not be able to tell, from the cease and desist orders and Regulation Articles IV.B.30 and IV.B.31, what activities were prohibited and what conduct was to cease. For the reasons stated above, this Court finds Article IV.B.31 of the Mansfield Zoning regulations to be unconstitutionally vague as applied to the facts of these cases. Article IV.B.30, is however, constitutionally valid. CT Page 8822
Furthermore, activities that are legal and permissible for any other four tenants in the subject property, may violate Article IV.B.31 or the Mansfield Zoning Regulations, if one or more of the tenants is a fraternity member. By way of example, a party in a house rented by four members of the rugby, baseball, basketball, or football teams would not violate Article IV.B.31. However, if those four tenants also belonged to a fraternity, the party would be in violation of the regulation. Similarly, if four tenants who were members of the chess team, debate club, or some religious or political organization had a meeting, dinner, or a party, they would not be in violation of Article IV.B.31. If, however, the four tenants in the neighboring house were members of a fraternity and they invited one or more other fraternity members for dinner, they would be in violation of Article IV.B.31. Likewise, if one house had a sign in front with Greek letters, that would probably be in violation of Article IV.B.31. At the same time, their neighbors could have a banner stating "Young Republicans" or "Student Democrats", without violating Article IV.B.31.
At the May 20, 1994 court hearing, the town's attorney stipulated on the record that the types of activities described above would violate Article IV.B.31, if one or more of the tenants belonged to a fraternity or sorority. These examples illustrate how this regulation could be utilized in the extreme. This also illustrates that it is virtually impossible for a landlord or tenant to know in advance what, if any, activities tenants can engage in without violating Article IV.B.31. The potentially prohibited activities are very often perfectly reasonable and legal activities by anyone other than people who belong to a fraternity or sorority. In this particular case, Mr. Nanos owns five adjoining houses. He leases all five. This regulation would prohibit his "Greek letter tenants" from engaging in the exact same activities, which his other tenants are free to do.
The plaintiff challenges the constitutionality of Article IV.B.31 of the zoning regulations as being a violation of the Due Process and Equal Protection clauses of the Connecticut and United States constitutions. In effect, the plaintiff claims there is no rational basis for distinguishing the plaintiff's "Greek letter tenants" from the other owners or tenants in this zone. Similarly situated properties (the five adjoining properties owned by Nanos) are not being treated equally. CT Page 8823
"When a statute is challenged on equal protection grounds, whether under the United States constitution or the Connecticut constitution, the reviewing court must first determine the standard by which the challenged statute's constitutional validity will be determined." (Citations omitted; internal quotation marks omitted.) Circuit-Wise, Inc. v. Commissioner ofRevenue Services, 215 Conn. 292, 299, 576 A.2d 1259 (1990). See also Johnson v. Meehan, 225 Conn. 528, 535, 626 A.2d 244 (1993) (where a plaintiff advances an equal protection claim, the court must ascertain whether the rational basis test or the more stringent strict scrutiny test should be used to assess the constitutionality of the statute). "If, in distinguishing between classes, the statute either intrudes on the exercise of a fundamental right or burdens a suspect class of persons, the court will apply a strict scrutiny standard wherein the state must demonstrate that the challenged statute is necessary to the achievement of a compelling state interest." (Citations omitted; internal quotation marks omitted.) Circuit-Wise, Inc. v.Commissioner of Revenue Services, supra, 215 Conn. 299. "If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge." (Citations omitted; internal quotation marks omitted.) Circuit-Wise Inc. v. Commissioner ofRevenue Services, supra, 215 Conn. 300.
"In the context of an equal protection challenge to social and economic legislation that does not infringe upon a fundamental right or affect a suspect group, the classification drawn by the statute will not violate the equal protection clause if it is rationally related to a legitimate public interest." (Citations omitted.) Johnson v. Meehan, supra, 225 Conn. 535. In the instant case, the Court is applying the rational basis test, since the regulation does not burden a suspect class of persons and does not infringe upon the exercise of a fundamental right.
"The United States Supreme Court has recently summarized the rational basis test as applied to social and economic legislation that does not infringe upon a fundamental right or affect a suspect group." (Citation omitted.) Id., 536. "In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decision maker, and the relationship of the classification to its goal is CT Page 8824 not so attenuated as to render the distinction arbitrary or irrational." (Citations omitted; internal quotation marks omitted.) Id. See also Circuit-Wise, Inc. v. Commissioner ofRevenue Services, supra, 215 Conn. 300 (under the rational basis test, the court's function is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way). Although the Court finds the purpose of the regulation to be legitimate, it is not designed to accomplish that purpose in a fair and reasonable manner. There is no rational basis for distinguishing between four unrelated tenants who belong to fraternities or sororities and four unrelated tenants who do not belong to "Greek letter" organizations.
Since the Court finds Article IV.B.31 unconstitutional, the Town of Mansfield is hereby enjoined from enforcing Article IV.B.31 in these cases. The cease and desist orders previously issued are to be rescinded forthwith.
The Court recognizes the problems the Town of Mansfield faces with two universities located near or within its boundaries. The Court believes that the offensive activities can be dealt with directly, rather than by the use of a vague regulation which, by necessity, denies "Greek letter tenants" equal protection of the law.
The party after the Yale/UConn game apparently was terribly out of control. The party could have been restricted or terminated when it got out of hand. That type of action would be applied equally to Fraternity/Sorority lessees and other "non-Greek letter affiliated" tenants.
Conclusion
The Mansfield Zoning Regulation, Article IV.B.31 is unconstitutionally vague as applied in these two cases. Therefore, plaintiffs appeal in each case is sustained. The town is enjoined from enforcing Article IV.B.31 in this manner. The cease and desist orders shall be rescinded forthwith.
BY THE COURT,
Honorable Jonathan J. Kaplan Superior Court Judge CT Page 8825